UNITED STATES of America,
Plaintiff–Appellee,

v.

George Vernon JOHNS and Albert
William Haberkorn, Defendants–
Appellants.

Nos. 89–10597, 90–10009.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 3, 1991.

Decided Nov. 4, 1991.

Roger S. Hanson, Santa Ana, Cal., for defendants-appellants.

John K. Vincent, Asst. U.S. Atty., Sacramento, Cal., for plaintiff-appellee.

Before TANG, FARRIS and D.W. NELSON, Circuit Judges.

D.W. NELSON, Circuit Judge:

## I.  OVERVIEW

Appellants George Vernon Johns and Albert W. Haberkorn appeal the district court's denial of their motion to suppress evidence in connection with their prosecution for conspiracy to manufacture methamphetamine.  The district court found that although the search of appellant Johns' storage locker did violate the Constitution, no suppression was required because the officers who conducted the search relied on the validity of the warrant in good faith.  That ruling is affirmed.

We also uphold the district court's determination that the affidavit, redacted of any misrepresentations, contained sufficient evidence of probable cause to search.  We also affirm the district court's ruling that the government's failure to disclose the existence of an informant it used in its investigation did not undermine its ability to rely on the warrant in good faith or negate probable cause to search.  Finally, we hold that the district court did not err in excluding the appellants from an *in camera* hearing about that informant.

## II. FACTS

On January 13, 1985, FBI agent John White applied for a search warrant for Unit 39 of the Kernville Mini–Storage in Kernville, California. After consulting with Assistant U.S. Attorney ("AUSA") Leighton, an AUSA of five years with three years of experience in prosecuting drug cases, White decided to apply for a "sneak and peek" warrant to gain surreptitious entry into the storage unit and photograph its contents. Leighton advised White that he had used a "sneak and peek" warrant before and that he knew of no prohibition against such searches. Leighton counseled White on what to state in the warrant application. Their plan was to watch the unit where they suspected certain chemicals were stored until they gained a lead about the location of the methamphetamine lab where the chemicals were used. The officers intended to notify the owners of the premises once an arrest was made or when they decided to conclude the surveillance.

White's affidavit accompanying the request for a search warrant stated that: 1) on January 10, 1985, federal agents "went to Unit 39 and detected no unusual odors emitting from the front of Unit 39," 2) Bray, a reserve deputy on the Kern County Sheriff's Office, was renting Units 10 and 11 at the Kernville Mini–Storage; these units were directly behind Unit 39 and separated from it only by a quarter-inch thick sheet of plywood, 3) on January 12, 1985, Bray and an investigator of the Kern County Sheriff's Office, Myers, visited unit 10 and 11, and 4) the men smelled an odor "which they both associated with the illicit manufacture of methamphetamine" coming from Unit 39; the odor was strongest at the rear of Unit 10, which was immediately adjacent to Unit 39. The affidavit further stated that Bray "has often smelled methamphetamine itself and the odor emitting from Unit No. 39 through Units No. 10 and 11 is consistent with the smell of methamphetamine, and inconsistent with any other activity." Based on this information, White asserted that there was probable cause to believe that Unit 39 contained chemicals utilized in the manufacture of methamphetamine.

In reliance upon this affidavit, a magistrate issued a search warrant for White to enter Unit 39 surreptitiously and examine its contents without taking anything. The agents and the magistrate discussed the fact that the agents would not give notice of the search when they first entered the storage locker, nor would they give notice for an indefinite period thereafter. The magistrate approved the warrant requiring only that they return to him an inventory of the items photographed.

The agents entered the unit on January 13, 1985, and photographed its contents. Inside they found boxes of chemicals and glassware commonly used in the manufacture of methamphetamine. After this initial search, the government placed agents near the storage unit to observe any activity. On January 26, 1985, agents observed someone bring more boxes to the unit. On March 2, 1985, they saw someone pick up the chemicals and take them to a lab at another building. Government agents searched the second building on March 11, 1985, discovered a methamphetamine laboratory, and arrested the appellants.

On April 2, 1986, appellants moved to suppress this evidence and for an evidentiary hearing on the validity of the search warrant. Their motion was denied.

On April 28, 1986, both Johns and Haberkorn entered a conditional plea of guilty to conspiracy to manufacture and distribute methamphetamine. After denying Johns' motion to reconsider the denial of his motion for an evidentiary hearing in light of *United States v. Freitas*, 610 F.Supp. 1560 (N.D.Cal.1985), *rev'd*, 800 F.2d 1451 (9th Cir.1986), the district court sentenced Johns to ten and Haberkorn to five years in prison.

On July 15, 1988, we issued an opinion in *United States v. Johns*, 851 F.2d 1131 (9th Cir.1988), holding that appellants had made a substantial preliminary showing that a hearing to test the validity of the affidavit was warranted under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). We also remanded to determine

whether the FBI agents relied in good faith on the "sneak and peek" warrant.

Following the *Franks* hearing, the district court found that the affidavit, redacted of any false statements or misrepresentations, still supported a finding of probable cause. The district court held the police relied on the warrant in good faith after consulting AUSA Leighton and the magistrate. Finally, the district court ruled that it was not error to exclude appellants from an *in camera* hearing on the government's informant, and that the failure to disclose the informant's existence did not undermine the government's good faith or affect the existence of probable cause.

## III. DISCUSSION

### A. Jurisdiction and Standard of Review

■ Our jurisdiction over this appeal rests on 28 U.S.C. § 1291 (1982). We focus here on the findings and conclusions of the district court on remand. All purely factual findings are reviewed under the clearly erroneous standard. *United States v. McConney*, 728 F.2d 1195, 1200 n. 5 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). Whether the agents' reliance on the warrant was objectively reasonable is reviewed *de novo*. *United States v. Dozier*, 844 F.2d 701, 707 (9th Cir.), *cert. denied*, 488 U.S. 927, 109 S.Ct. 312, 102 L.Ed.2d 331 (1988).

### B. Probable Cause

■ Appellants contend that the affidavit supporting the search warrant did not support a finding of probable cause because it contained misrepresentations and material omissions. On appeal, the duty of a reviewing court is to ensure that the magistrate had a substantial basis for concluding that probable cause existed. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1982); *United States v. Grandstaff*, 813 F.2d 1353, 1355 (9th Cir.), *cert. denied*, 484 U.S. 837, 108 S.Ct. 119, 98 L.Ed.2d 78 (1987). In our review, we examine all circumstances set forth in the affidavit. *Gates*, 462 U.S. at

238–239, 103 S.Ct. at 2332–2333. In doubtful cases, the reviewing court should give preference to the validity of the warrant. *United States v. Peacock*, 761 F.2d 1313, 1315 (9th Cir.), *cert. denied*, 474 U.S. 847, 106 S.Ct. 139, 88 L.Ed.2d 114 (1985).

■The search warrant contained several statements regarding the odors the agents smelled while visiting storage units 10 and 11. The affidavit states that when Deputy Myers opened the doors to his unit, both Investigator Bray and Myers detected a very strong odor "which they both associated with the illicit manufacture of methamphetamine." Bray stated that this odor was strongest at the rear of Unit 10, which shares a wall with unit 39. The affidavit also contained Bray's statement that the smell he detected in units 10 and 11 "is inconsistent with any activity other than the illicit manufacture of methamphetamine or the storage of chemicals used solely in the manufacture of methamphetamine."

During cross-examination at the *Franks* hearing, Leighton and Bray admitted that some of the statements in the unredacted affidavit were not true. Leighton admitted that he knew from his training that methamphetamine itself has no odor. Bray admitted that he was told in courses that methamphetamine manufactured under clinical conditions probably has no smell at all; the government's chemist also stated that he knew methamphetamine has no smell. Bray further conceded under questioning by the district court that the chemicals used in the manufacture of methamphetamine have other, legitimate purposes. Bray stated, however, that he was familiar with the smell of methamphetamine labs, a smell generated by the use of various chemicals during the process of making the drug.

After the *Franks* hearing, the district court redacted some, but not all of the untruthful statements from the affidavit. An examination of the affidavit shows that some offending statements remain. Specifically, the court left in the statement that Bray "has often smelled methamphetamine

itself" and that the odor coming from Unit 39 "is consistent with the smell of methamphetamine, and inconsistent with any other activity." Since Bray and Leighton admitted that methamphetamine has no smell and that the chemicals could have been used for other activities, these statements are false and should have been redacted.

Without these offending statements, the affidavit contains a description of the storage locker, who owns it, and the following statements: 1) Bray and Myers detected a "very strong odor" with which Bray was familiar, 2) when Bray and Myers opened the door to Units 10 and 11 they "detected a strong odor which they both associated with the illicit manufacture of methamphetamine," and 3) that the odor was strongest at the rear of Unit No. 10, which is adjacent to Unit 39. The government argues that this information supports a finding of probable cause because in addition to the chemicals, the methamphetamine manufacturing equipment stored in the locker—an Allen condenser, some plastic tubing and the cardboard boxes in the storage room—all released a smell associated with the manufacture of methamphetamine. DEA chemist Davidson testified that the Allen condenser had been used before in the methamphetamine manufacturing process and emitted a strong odor. He also testified that the plastic tubes had been used before and could emit odors, and that the cardboard boxes were saturated and odorproducing. Moreover, Bray testified that the odor was strongest when he smelled the Allen condenser while executing the "sneak and peek" search warrant.

We agree with the government. The presence of the odorous Allen condenser, the used tubes and saturated cardboard boxes sufficiently supports the affidavit's contention that the storage room emitted smells associated with the manufacture of methamphetamine. We conclude, therefore, that the affidavit redacted of any misrepresentations provides a sufficient basis for probable cause to search.

1. Although no property was "removed" from the storage locker, photographic images were "seized" and information was gathered about its

### C. Admissibility of the Evidence

Appellants allege that by failing to notify them of the search of the storage locker, the government violated Fed.R.Crim.P. 41(d). We conclude that although appellants correctly identify a violation that would ordinarily warrant suppression, the evidence is admissible in this instance because the officers relied in good faith upon a warrant.

#### 1.  *Violation of Rule 41(d)*

■ We review de novo the question of whether a violation of Rule 41(d) requires suppression. *United States v. Freitas*, 856 F.2d 1425, 1428 (9th Cir.1988) (*Freitas II* ).

Rule 41(d) requires that "[t]he officer taking property under the warrant shall give to the person from whom or from whose premises the property was taken a copy of the warrant and a receipt for property taken or shall leave the copy and receipt at the place from which the property was taken." A warrant which does not provide for notice of the search fails to comply with Rule 41(d). *United States v. Freitas*, 800 F.2d 1451, 1455–56 (9th Cir. 1986) (*Freitas I*).[1]

In this case, a magistrate approved the deletion of the notice provisions in the warrant which the agents executed on January 13, 1985. Thereafter, little activity occurred until March 2, 1985, when someone took the boxes of chemicals stored in the locker to a suspected laboratory in another building. On March 11, 1985, 57 days after the original warrant was executed, agents searched the second building, found a methamphetamine lab, and arrested several suspects. The government did not serve appellants notice of the "sneak and peek" search until they were arrested. This conduct is a clear violation of Rule 41(d).

■ Once a violation of Rule 41(d) is identified, the next inquiry is whether the violation is "fundamental" or "non-fundamental." This inquiry is necessary to de-

contents. We have already held that the seizure of intangible property falls within the ambit of Rule 41(d). *See Freitas I*, 800 F.2d at 1455.

termine whether the evidence produced by the search must be suppressed. Fundamental violations, ones which are unconstitutional under traditional Fourth Amendment standards, require automatic suppression of the evidence produced. *United States v. Luk*, 859 F.2d 667, 671 (9th Cir. 1988). Non-fundamental violations—violations which do not arise to constitutional error—on the other hand, require suppression only where: 1) there was "prejudice" in the sense that the search might not have occurred or would not have been so abrasive if the rule had been followed or 2) there is evidence of intentional and deliberate disregard of a provision of the rule. *Id.* (quoting *United States v. Vasser*, 648 F.2d 507, 510 (9th Cir.1980), *cert. denied,* 450 U.S. 928, 101 S.Ct. 1385, 67 L.Ed.2d 360 (1981)); *see also United States v. Radlick,* 581 F.2d 225, 228 (9th Cir.1978) (quoting *United States v. Burke,* 517 F.2d 377, 386–87 (2d Cir.1975)). In this case, we find that the agents have committed a nonfundamental violation falling under the first prong. Suppression ordinarily would be required because the appellants have suffered "prejudice" in that the "search might not have occurred or would not have been so abrasive" if the agents have followed Rule 41(d).[2]

At the *Franks* hearing, the district court heard testimony indicating that Leighton and Bray intended to delay indefinitely notifying the appellants of the search. For example, Leighton testified that the government intended to notify appellants of the search only if and when "the investigation went nowhere" or appellants were arrested. FBI agent White testified that they planned not to notify appellants for "an indeterminate period of time." White said their objective was to "locate them at their lab ... however long that took ... provided, of course, we could justify or warrant our surveillance activities." White testified that he and Leighton did not dis-

cuss a termination date in the event that no activity was observed at the storage units.

Clearly, the agents and the AUSA intended to delay notification for the duration of the investigation. They undertook surveillance of the storage units in the hopes of gaining a lead to the methamphetamine lab. The district court found that "[d]epending upon developments, [the investigation] could last indefinitely." We conclude from the government's testimony that the search might not have occurred if they had been forced to give notice within seven days. Appellants therefore suffered "prejudice" from the Rule 41(d) violation. For this reason, the violation would ordinarily require suppression of the evidence.[3]

### 2. *Good Faith Exception to the Exclusionary Rule*

■ On remand, the district court also concluded that because an AUSA and a magistrate approved the "sneak and peek" warrant, even though it failed to meet the notification requirements, the evidence would not be suppressed because the search fell within the good faith exception to the exclusionary rule enunciated in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). We believe that we are constrained by Supreme Court and circuit precedent to uphold the district court's determination that this search does indeed fall within that exception.

■ In *Leon,* the Supreme Court listed four circumstances in which the good faith exception will not apply: 1) when the magistrate was misled by information in the affidavit the affiant knew or should have known was false, 2) when the magistrate has wholly abandoned her judicial role, 3) when the affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, and 4) when the warrant is so facially defi-

---

**2.** Having so found, we need not decide whether a clear constitutional violation has occurred.

**3.** Appellants also allege a nonfundamental Rule 41(d) violation on the ground that the surreptious search somehow affected the completion of their crime. *Freitas II,* 856 F.2d at 1433.

They argue that had they known of the government surveillance, they would not have continued to buy chemicals and transport them to and from the storage units. Having already found a violation of Rule 41(d) potentially warranting suppression, we do not resolve this issue.

cient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid. *Id.* at 923, 104 S.Ct. at 3421. Additionally, the Court has indicated that the good faith exception does not apply to cases where the magistrate had no business issuing the warrant. *Massachusetts v. Sheppard,* 468 U.S. 981, 990, n. 7, 104 S.Ct. 3424, 3429, n. 7, 82 L.Ed.2d 737 (1984) (quoting *Illinois v. Gates,* 462 U.S. 213, 264, 103 S.Ct. 2317, 2346, 76 L.Ed.2d 527 (1983) (White, J., concurring in judgment)).

None of the *Leon* categories applies to this case. There was no use of materially misleading information in the affidavit. We find no evidence that the magistrate wholly abandoned her judicial role. As discussed above, we find that there was probable cause to search, even with the improper statements redacted from the affidavit. And as we have held before, failure to provide for notice does not necessarily render a warrant facially deficient. *See* discussion below.

This case resembles the situation we considered in *Freitas II.* In *Freitas II,* we held that the prosecutor's and the magistrate's approval of the illegal provisions of the warrant were sufficient to establish objectively reasonable behavior on the part of the officers conducting the search. 856 F.2d at 1431. We likened that situation to the facts before the Supreme Court in *Sheppard.* There, too, an officer prepared an affidavit which a district attorney reviewed and approved. He then presented it to a judge who decided that probable cause existed and issued a warrant. The judge made a clerical error in failing to delete the words "controlled substance" from the search warrant. The Court held that it was the judge, not the police officers, who made the critical mistake. 468

U.S. at 990, 104 S.Ct. at 3428. The Court reasoned that the police conduct was objectively reasonable in that the police "took every step that could reasonably be expected of them." *Id.* at 989, 104 S.Ct. at 3428. The Supreme Court explained:

> An error of constitutional dimensions may have been committed with respect to the issuance of the warrant, but it was the judge, not the police officers, who made the critical mistake. "[T]he exclusionary rule was adopted to deter unlawful searches by police, not to punish the errors of magistrates and judges." *Illinois v. Gates,* 464 [462] U.S. 213, 263 [103 S.Ct. 2317, 2346, 76 L.Ed.2d 527] (1983) (White, J., concurring in judgment).

*Id.* at 990, 104 S.Ct. at 3429 (parallel citations omitted). We therefore concluded in *Freitas II:*

> Like the police detective in *Sheppard,* the agents involved in the instant case consulted and secured the approval of a government attorney. They then fully informed the magistrate of the contents of the warrant, including the controversial deletion of the notice provisions, and obtained his approval as well. These acts were sufficient to establish objectively reasonable behavior under *Sheppard.*

856 F.2d at 1431. Under *Sheppard,* after consulting both a government attorney and a neutral detached magistrate, we held that "the agents were not required to disbelieve these experts." *Id.* at 1432. This precedent constrains us to hold that the good faith exception as developed in *Leon* permits the evidence generated from the search in this case to be introduced at trial.[4]

Finally, we cannot say that the failure to provide for notice is a deficiency so fundamental that the magistrate should never

---

4. Appellants also argue that the "sneak and peek" search violated the Fourth Amendment independent of the Rule 41(d) violation. They argue that the Fourth Amendment requires that officers provide notice of searches within a reasonable, but short, time after the surreptitious entry. *See Freitas I,* 800 F.2d at 1456. Appellants are correct. However, as in *Freitas II,* the agents' consultation with the government attor-

ney and the magistrate's approval of the warrant in this case provides a sufficient basis from which the agents could objectively conclude that the search was justifiable. *Freitas II,* 856 F.2d at 1431. As a result, the Fourth Amendment violation in this instance, like the Rule 41(d) violation, does not require the suppression of the evidence because the agents relied upon the warrant in good faith.

have issued the warrant. At the time the warrant was executed, the rule that notice of searches should be given within seven days, absent a strong showing of necessity, had not yet been announced. *See Freitas I*, 800 F.2d at 1456. Although Rule 41(d) would seem to imply a reasonable time period, we cannot say that before *Freitas I* it was clear that a magistrate had no business issuing a warrant which failed to provide for notice within seven days. However, magistrates and other law enforcement officials are charged with the knowledge that warrants issued after *Freitas I* should *not* issue without a provision for seven-day notice absent a strong showing of necessity. We wish to make it clear that deliberate disregard of this rule will indicate to reviewing courts that the warrant should *never* have been issued, and will render inapplicable the good faith exception. In this instance, however, we affirm the district court's determination that the evidence was admissible under the good faith exception to the exclusionary rule.

## D. The Informant

In *United States v. Johns*, 851 F.2d 1131, 1135 (9th Cir.1988), this court remanded this case to the district court to determine whether the good faith exception would excuse the Fourth Amendment and Rule 41(d) violations. In particular, we were concerned with the alleged failure of the government to disclose to the magistrate that an informant allegedly provided much of the information contained in the affidavit submitted with the warrant application. On remand, the government indicated that disclosing the informant's identity would jeopardize the informant's safety and compromise ongoing investigations. The district court conducted an *in camera* hearing which confirmed the government's position on the informant's safety. At the hearing, the informant advised the court that in the company of investigating officers, he visited storage unit 39 in November or December of 1985. He stated that the odor associated with the manufacture of methamphetamine was readily discernable.

In *United States v. Fixen*, 780 F.2d 1434, 1439 (9th Cir.1986), this court encouraged the use of an *in camera* hearing where the government opposed disclosure of the informant's identity for safety reasons. The procedure provides a balance between the competing interests of the government and the accused in a situation where the " 'question is whether a law enforcement officer has lied.' " *Id.* (quoting *United States v. Moore*, 522 F.2d 1068, 1073 (9th Cir.1975), *cert. denied*, 423 U.S. 1049, 96 S.Ct. 775, 46 L.Ed.2d 637 (1976)). The judge's inquiries will both protect the secrecy of the government's investigations and will perhaps save the defendant from potentially serious police misconduct. *Id.* at 1439–40.

■ Appellants complain of their exclusion from the hearing. They contend that their exclusion rendered the hearing insufficient under *Franks* and that they should have been permitted to cross-examine the witness. We disagree. We find that the government made an adequate showing of necessity under *Fixen* to support the use of an *in camera* hearing. Appellants' argument that error was committed by excluding them fails.

■ Appellants also contend that because the government lied regarding the existence of an informant, its deception undermines its good faith reliance on the search warrant. The district court found that the government did lie about the informant's existence; the government disputes that conclusion. However, as we have already determined that probable cause existed based on the redacted affidavit, the government's truthfulness is irrelevant because it does not alter either the good faith reliance of the officers or the existence of probable cause.

■ The government need not include *all* of the information in its possession to obtain a search warrant. An affidavit need only show facts adequate to support a finding of probable cause. *United States v. Ellison*, 793 F.2d 942, 947 (8th Cir.), *cert. denied*, 479 U.S. 937, 107 S.Ct. 415, 93 L.Ed.2d 366 (1986). The omission of facts rises to the level of misrepresentation only if the omitted facts "cast doubt on the

existence of probable cause." *Id.* (quoting *United States v. Dennis*, 625 F.2d 782, 791 (8th Cir.1980)).

As the district court pointed out, the omitted information does not detract from probable cause, but adds to it. If the informant were proved reliable, his statements would lend further support to a probable cause finding. The omission of information that might have strengthened a finding of probable cause does not justify a *Franks* hearing. *United States v. Wulferdinger*, 782 F.2d 1473, 1477 (9th Cir.1986). The district court correctly concluded that the government did not undermine its good faith reliance on the warrant or lessen probable cause by choosing not to disclose the informant's existence and the information he provided.

## IV. CONCLUSION

By failing to give notice of the search, the government committed a "nonfundamental" violation of Fed.R.Crim.P. 41(d). Because the violation caused the appellants prejudice, we would ordinarily require suppression of the evidence. However, we find that the search falls within the good faith exception to the exclusionary rule. The district court's decision to admit the evidence is AFFIRMED. The district court's exclusion of appellants from the *in camera* hearing concerning the informant and its finding that the government's failure to disclose the informant's existence did not undermine the finding of probable cause is also AFFIRMED.