**UNITED STATES of America**

v.

**Keith R. LUDWIG(1) John Patrick Gordon(3).**

**No. EP–94–CR–260–DB.**

United States District Court, W.D. Texas, El Paso Division.

Oct. 26, 1995.

Joe Galenski, Assistant United States Attorney, El Paso, Texas, for plaintiff.

Alan P. Caplan, San Francisco, California, Carlos Villa, El Paso, Texas, for defendant.

### *ORDER*

BRIONES, District Judge.

On this day, the Court considered Defendants' Motion to Suppress Evidence Seized During the Government's Search of Remcon Storage Unit Number 114 in El Paso, Texas on December 8, 1993, filed on March 24, 1995, in the above-captioned cause. The government's Response was filed on April 21, 1995. This Court held a hearing in the matter on July 27, 1995. Defendants filed a Supplementary Memorandum in Support of their motion on September 28, 1995. The government filed no reply, but did file a Motion to Strike Defendants' Post Hearing Memorandum on October 6, 1995. The government's motion to strike was denied. After due consideration, the Court is of the opinion that the matter shall be resolved as set forth below.

### STATEMENT OF FACTS

On August 9, 1993, a United States Customs Drug Storage Facility ("DSF"), located in El Paso, Texas, was burglarized. An inventory of the contents of the facility revealed that approximately 356 pounds (162 kilograms) of cocaine had been stolen. Customs investigators determined that the alarm system had been disabled in a manner indicating that someone with general knowledge of security systems was involved. The investigators also learned that entry into the facility was made by way of a skylight.

In October, 1993, a United States Customs Special Agent received information from an individual concerning the theft of the cocaine from the DSF. This person stated that another individual known as Keith Ludwig ("K. Ludwig") was responsible for disabling the alarm system at the storage facility. On June 13, 1994, another confidential informant advised Customs Agents that he/she was told by Nicholas Ludwig ("N. Ludwig"), that he, N. Ludwig, had participated in a burglary in El Paso, Texas, in which approximately 160 kilograms of cocaine had been stolen. N. Ludwig also told the informant that his brother, K. Ludwig, had disabled the alarm system at the location where the burglary was committed. N. Ludwig also told the confidential informant that the cocaine stolen from the DSF in El Paso had been delivered to an individual named John, who resided in the St. Petersburg, Florida area.

Another confidential informant revealed to the agents that he/she had overheard K. Ludwig state that he had been hired to disable the alarm system at the El Paso DSF. The source also told the agents that K. Ludwig rented a self storage unit at Remcon Self Storage Center, 7315 Remcon Circle, El Paso, Texas, ("unit") and that he/she had recently been inside the unit and had personally seen at least one kilogram of cocaine there. The informant also stated that he/she had seen an undetermined quantity of cocaine in a U–Haul moving box inside of the unit.

On December 4, 1993, Customs Agents contacted the management of the Remcon Self Storage Center and learned that the lessee of the unit was one John P. Gordon ("Gordon"). The manager of the unit identified a photograph of K. Ludwig as Gordon. The manager also stated that K. Ludwig was the individual who paid the rent on the unit, and had access to the unit.

On December 7, 1993, the government filed an application in the United States District Court for the Western District of Texas, El Paso Division, for a warrant to search the unit for cocaine. The application was supported by the affidavit of Customs Service Special Agent Compton. At that time, the government filed a motion requesting that the affidavit be temporarily placed under seal. The type of search warrant sought by the government is referred to as a "sneak and peek" search warrant, and is a situation in which government agents desire only to

determine whether the contraband is present, but have no wish to seize the contraband. The government also sought authority to delay delivery of notice that the search had been conducted. The government's motions were granted and the search warrant was issued.

The warrant was executed on December 8, 1993, and the search was videotaped. The agents found no cocaine, but did find approximately $50,000 in cash which they did not seize. The agents also observed, in plain view, several items which were indicative of a burglary of the type committed at the El Paso DSF. Those items included night vision goggles, a telephone lineman's bag, tools, and hardhats, boltcutters, repelling equipment and helmets, and rubber surgical gloves. None of these items were seized.[1]

Defendants challenge the search of the Storage Unit as violative of their Fourth and Fifth Amendment rights, and Rule 41(d) of the Federal Rules of Criminal Procedure. The government alleges that Defendant John Patrick Gordon has no standing to challenge the search of the unit.

## ANALYSIS OF THE MERITS

### A. Standing.

As a preliminary matter, the Court finds that Defendant Gordon has standing to challenge the search of the unit. Gordon's name was on the rental agreement and Gordon had access to the unit. Consequently, Gordon has standing to challenge the search.

### B. Facial Insufficiency of Agent Compton's Affidavit.

Defendants' first contention is that the affidavit of Special Agent Compton contained a statement of probable cause which was facially insufficient to support the issuance of the warrant. In determining the existence of probable cause, the judge must make a practical, "common sense decision as to whether, given all the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will

be found in a particular place". *United States v. Byrd*, 31 F.3d 1329, 1340 (5th Cir. 1994); *United States v. McKeever*, 5 F.3d 863, 865 (5th Cir.1993), citing *Illinois v. Gates*, 462 U.S. 213, 239, 103 S.Ct. 2317, 2332–33, 76 L.Ed.2d 527 (1983). The duty of the reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. *Id.* However, the reviewing court (including district courts) "should afford a magistrate judge's decision 'great deference'". *United States v. Ishmael*, 48 F.3d 850 (5th Cir.1995), citing *Gates* at 236, 103 S.Ct. at 2331. *See also United States v. McCarty*, 36 F.3d 1349, 1356 (5th Cir.1994).

Defendants challenge the affidavit because it includes information provided to Agent Compton by confidential informants. They contend that insufficient probable cause would have existed if such statements had not been included in the affidavit, and further that the statements should not have been included because the affidavit contained none of the "traditional indicia" of informant reliability. However, this argument fails under the totality of circumstances analysis set forth in *Illinois v. Gates*, 462 U.S. at 213, 103 S.Ct. at 2319–20. It is not fatal that the affidavit did not set out the reliability of the confidential informants because there were sufficient facts, taken as a whole, to support the magistrate's determination of probable cause. *See United States v. Daniel*, 982 F.2d 146, 151 (5th Cir.1993). The statements of the confidential informants were corroborated by other information provided by the management at Remcon Self Storage. The magistrate's determination of the existence of sufficient probable cause to issue the search warrant was proper.

### C. Misstatements and Omissions Contained in the Compton Affidavit.

Defendants' next contention is that the Compton affidavit contained intentional and reckless omissions and misstatements of material facts, and that the omissions and

---

1. The Court notes that, after a thorough viewing of the videotapes of the search, there were no

*items seized from the unit.*

misstatements were made with reckless disregard for their truth or falsity. *See Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Defendants contend that if the affidavit were redacted to reflect these alleged omissions and misstatements, then the affidavit was insufficient to support the issuance of a search warrant.

Allegations of negligence or innocent mistake are insufficient with regard to the affidavit. The deliberate falsity or reckless disregard whose impeachment is permitted is only that of the affiant. *Franks* at 171, 98 S.Ct. at 2684. Recklessness may be presumed from the proof of the omission itself if the facts omitted from the affidavit are clearly critical to a finding of probable cause. *See United States v. Martin,* 615 F.2d 318, 329 (5th Cir.1980); *Hale v. Fish,* 899 F.2d 390, 400 (5th Cir.1990).

It is not necessary for the Court to determine the sufficiency of the affidavit if Defendants' requests for redaction were granted. There has been no showing whatsoever that the statements made by Agent Compton were made with deliberate or intentional falsity or reckless disregard for the truth. Absent such a showing under the *Franks* analysis, Defendants' argument must fail. Therefore, the affidavit supported the magistrate's finding of probable cause.

## D. Execution of the Search Warrant Was Merely a Pretext to Conduct a General Search of the Unit.

Defendants' next contention is that the agents used the search warrant as a pretext for conducting a general search of the unit, and that the agents searched for and/or seized items without authorization. Defendants refer to the "narrow scope" of the search warrant in that the warrant only authorized a search for cocaine. However, because the search warrant authorized a search for cocaine, the agents were within their authority, and the scope of the warrant, to search all places, containers and contents in the unit which might be capable of holding cocaine. *See United States v. Benavides,* 854 F.2d 701 (5th Cir.), *cert. denied,* 488 U.S. 973, 109 S.Ct. 510, 102 L.Ed.2d 545 (1988). While the scope of such a search is governed by the terms of the warrant, the search may be as extensive as is reasonably required to locate the items described in the warrant. *See United States v. Diecidue,* 603 F.2d 535, 560–61 (5th Cir.), *cert. denied,* 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 781 (1980).

After viewing the videotapes, it is clear to the Court that the agents were searching for cocaine. The search, as conducted, was not a pretext for a general search of the unit. The discovery of other items in the unit was incidental to that search. As noted earlier, the agents removed/seized nothing from the unit. The manner in which the search was conducted was consistent with the scope of the search warrant.

## E. The Government Should Be Precluded From Presenting Any Evidence Related to Items of Personal Property Discovered in the Unit.

Defendants contend that items of personal property were seized and taken from the unit pursuant to the search. However, as noted earlier, the Court finds that nothing was removed/seized from the unit. Defendants also contend that the videotaping of the search, as well as the taking of still photographs of items found incident to the search, constituted an unauthorized "seizure" of the items depicted in the videotape and the photographs. Defendants also contend that the videotaping and photographing constituted a significant interference with the Defendants' possessory interests in the property videotaped/photographed because they had a reasonable expectation of privacy in those items to the extent that they would only be exhibited to others if and when the Defendants chose to do so. This argument fails. The videotapes and photographs are simply a record of what the agents saw in plain view. They are not seizures subject to Fourth Amendment Restrictions. *See* LeFave, *Search and Seizure,* § 2.2, n. 11; *United States v. McMillon,* 350 F.Supp. 593 (D.D.C.1972). If an item is in plain view, neither its observation nor its "seizure" would involve any invasion of privacy. *See Horton v. California,* 496 U.S. 128, 132, 110 S.Ct. 2301, 2305, 110 L.Ed.2d 112. *See also United States v. Hill,* 19 F.3d 984 (5th Cir.),

*cert. denied,* —— U.S. ——, 115 S.Ct. 320, 130 L.Ed.2d 281 (1994).

In this case, the agents were lawfully inside of the unit, pursuant to a valid search warrant, which authorized an inventory with photographs taken. The incriminating nature of the items found in the unit was immediately apparent to the agents. While there is no specific Fifth Circuit case dealing with the videotaping of a search, other circuits have referred to such videotapes. *See United States v. Garcia,* 20 F.3d 670 (6th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1120, 130 L.Ed.2d 1083 (1995) (admissibility of videotape of search at trial); *United States v. Nicholson,* 17 F.3d 1294 (10th Cir. 1994) (viewing of videotape of search to resolve suppression issue); *United States v. Paskett,* 950 F.2d 705 (11th Cir.1992) (viewing of videotape of search to resolve suppression issue); *United States v. Carpenter,* 933 F.2d 748 (9th Cir.1991) (admissibility of videotape of search at trial). This Court finds that the videotaping and photographing of items discovered pursuant to a lawful search did not violate any of the Defendants' privacy rights.

### F. Inadequate Showing of Necessity for Failure to Comply With Notice Requirement of Federal Rule of Civil Procedure 41.

 Defendants also contend that there was an inadequate showing of necessity for failure to comply with the notice requirement of Fed.R.Civ.Pro. 41. In *United States v. Villegas,* 899 F.2d 1324, 1336 (2nd Cir.1990), the Court delineated two limitations on such searches, one of which is that law enforcement agents must make a showing of reasonable necessity for the delay. The agents clearly did so in this instance. They believed that K. Ludwig would likely flee the jurisdiction if he received notification, and they believed that the contraband would likely be removed by one of the conspirators at which time agents would follow the individual in an attempt to identify other co-conspirators. Agent Compton also stated that the delay was necessary to protect the safety of the confidential informant. Clearly, the agents presented the magistrate with sufficient factual information to justify the issuance of the warrant such that the delay of notice presented no violation of Rule 41.

### G. Sneak and Peek Type Search Warrants Generally.

 In reviewing a motion to suppress evidence, a court must engage in a two-part inquiry. First, whether the good-faith exception to the exclusionary rule applies, *See United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); and second, whether the warrant was supported by probable cause. Generally, if the good-faith exception applies, the court need not reach the issue of probable cause. *United States v. Mitchell,* 31 F.3d 271, 275 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 649, 130 L.Ed.2d 553 (1994). However, if the case involves a "novel question of law whose resolution is necessary to guide future action by law enforcement officers and magistrates", then the court must address the issue of probable cause. *Gates* at 254, 103 S.Ct. at 2340–41. *See also United States v. Laury,* 985 F.2d 1293, 1311 (5th Cir.1993).

Defendants argue that the good faith exception should not be applied to sneak and peek warrants because such warrants present a "novel issue of Fourth Amendment law". Admittedly, such warrants are a recently new development in Fourth Amendment law. At the appellate level, only the Second and Ninth Circuits have ruled upon the validity of sneak and peek search warrants. *See United States v. Freitas,* 856 F.2d 1425 (9th Cir.1988); *United States v. Johns,* 948 F.2d 599 (9th Cir.1991), cert. denied, 505 U.S. 1226, 112 S.Ct. 3046, 120 L.Ed.2d 913 (1992); *United States v. Villegas,* 899 F.2d 1324 (2nd Cir.1990), *cert. denied,* 498 U.S. 991, 111 S.Ct. 535, 112 L.Ed.2d 545 (1990); *United States v. Pangburn,* 983 F.2d 449 (2nd Cir.1993). Additionally, the good faith exception in *Leon* was relied upon in the sneak and peek cases of *Johns* and *Freitas.* In *Pangburn,* the Second Circuit held that such searches are less intrusive than conventional searches. *Pangburn* at 454–55.

This Court is of the opinion that the same standard for probable cause applies to all

search warrants, whether the property is seized or not. Therefore, the good-faith exception to the exclusionary rule applies in the instant case and the Court need not reach the issue of probable cause.

For the reasons set forth above, the Court is of the opinion that the search of the Remcon Storage Unit was proper.

Accordingly, it is hereby **ORDERED, ADJUDGED,** and **DECREED** that Defendants' Motion to Suppress Evidence Seized From Remcon Storage Unit Number 114 is **DENIED.**