# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
  *Plaintiff-Appellant,*

v.

THAI TUNG LUONG,
  *Defendant-Appellee.*

No. 05-50090

D.C. No.
CR-04-01210-DT

OPINION

Appeal from the United States District Court
for the Central District of California
Dickran M. Tevrizian, District Judge, Presiding

Argued and Submitted
February 14, 2006—Pasadena, California

Filed December 12, 2006

Before: Betty B. Fletcher, Warren J. Ferguson, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Ferguson;
Dissent by Judge Callahan

19331

**COUNSEL**

Matthew D. Umhofer, Assistant United States Attorney, Los Angeles, California, for the plaintiff-appellant.

Stephen G. Frye, Los Angeles, California, for the defendant-appellee.

**OPINION**

FERGUSON, Circuit Judge:

The government appeals the District Court's order suppressing evidence seized from Appellee Thai Tung Luong's residence and storage locker. The District Court held that the government did not have probable cause to search Luong's residence, and that suppression of the fruits of this search was

appropriate because the "good faith" exception to the exclusionary rule did not apply. On appeal, the government concedes the search was not supported by probable cause but contends that the warrant contained sufficient indicia of probable cause to render the officers' reliance on the warrant objectively reasonable. We agree with the District Court that the warrant in this case was so lacking in indicia of probable cause that a reasonably well-trained officer could not have relied on it in good faith. We therefore affirm the suppression order.

## I.  BACKGROUND

### A.  The Search Warrant

On August 1, 2003, agents of the Drug Enforcement Administration (DEA), in conjunction with local Los Angeles police officers, initiated an investigation of Chun-Ying Jao, a Taiwanese male, after Jao arrived in Los Angeles on a flight from Hong Kong. The next day, the agents sought a warrant to search the residence of Appellee Thai Tung Luong, with whom Jao had met earlier that day.

Officer Lori Fishburn of the Monterey Park Police Department swore out the affidavit submitted in support of the warrant. The affidavit asserted the following: that a multi-agency investigation of Chun-Ying Jao was underway; that Jao had arrived in Monterey Park, California, and had checked into a local hotel; that the Hong Kong office of the DEA had informed the Los Angeles office that "a suspected suspect known as a chemist" was arriving at Los Angeles International Airport (LAX) to "set[ ] up and manufactur[e] methamphetamine"; that a flight arrived at LAX on August 1; and that police followed Jao to a hotel.

The affidavit detailed the continuous surveillance of Jao after his arrival at the hotel as follows. On August 2, the day after Jao arrived at the hotel, an Asian male, later identified

as Luong, arrived at the hotel and went into Jao's hotel room. Several minutes later, Jao and Luong left the room, got into Luong's car, and drove to a restaurant where they ate lunch. They then left the restaurant and drove to a residence. They entered the residence and walked back and forth several times between the front door and the back yard. Several hours later, Jao and Luong left the residence and drove to a Home Depot store. They entered the store with Jao carrying a red high pressure hose. Luong asked an employee "how to insert a new adapter fitting into his hose." Luong then purchased a small adapter fitting, and he and Jao drove back to the residence. Officer Fishburn concludes her affidavit by stating that she recognized the hose as a common tool used with a vacuum pump during the production of methamphetamine.

After surveilling the residence for another seven hours, the agents prepared and submitted the affidavit to a state magistrate judge, who issued a warrant to search Luong's residence for evidence of methamphetamine manufacturing. The search warrant was signed at 2:45 a.m. on August 3, 2003, and the agents executed the warrant three hours later, at 5:45 a.m. During the search of the residence, the officers discovered evidence of a methamphetamine laboratory and documents related to a storage unit rented by Luong. The officers obtained an additional warrant for the storage unit, which contained sixty-eight pounds of methamphetamine.

## B.  Proceedings in State and Federal Court

Luong was indicted in California state court. He moved to suppress the evidence seized during the search of his residence and storage unit. The superior court suppressed the evidence and dismissed the indictment on the basis that the warrant lacked probable cause and the good faith exception to the exclusionary rule did not apply. The state appellate court affirmed the superior court's dismissal.

Luong was subsequently indicted in federal court for conspiring to manufacture and possess methamphetamine with

intent to distribute in violation of 21 U.S.C. § 846; manufacturing and possessing methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1); and maintaining a place for manufacturing methamphetamine near an elementary school in violation of 21 U.S.C. §§ 856(a)(1) and 860. Luong filed a motion to suppress, contending that the warrant to search his residence was not supported by probable cause, and that the officers could not have relied on the warrant in good faith because the affidavit was so lacking in indicia of probable cause as to render official belief in its existence objectively unreasonable.

The District Court held a hearing on Luong's motion on January 11, 2005. The government argued that the court should factor the presence of exigent circumstances into its determination of whether the officers relied on the warrant in good faith. Officer Fishburn testified at the hearing that she was under time pressure to prepare the warrant because she believed Jao and Luong were fixing a broken drug lab, which could threaten the community with a chemical explosion or fire if the lab became functional. Officer Fishburn also cited technical difficulties in printing and faxing the warrant, and in typing the warrant due to a broken thumb and sprained wrist. She acknowledged on cross-examination, however, that other members of her team were available to type for her and that she could have continued typing herself.

The government also argued that where evidence of probable cause is not sworn out in an affidavit but is orally conveyed to a magistrate, it may be considered by later courts in determining whether the officers acted in good faith. Officer Fishburn testified before the District Court that she spoke with the magistrate judge on the phone two or three times while preparing the affidavit. During these conversations, which were neither recorded nor sworn, she told the magistrate that the DEA's Hong Kong office possibly initiated a wiretap, which may have been the source of the information relayed to the DEA in Los Angeles; that Jao was identified

with information from the tip as he passed through customs in Los Angeles; that the DEA did not want to divulge the fact that there was a wiretap in this case; and that the agents had observed counter-surveillance driving during their investigation. Officer Fishburn testified that she had not included this information in her affidavit because she had been rushed, but that "it should have been in there."

The District Court declined to factor into the good faith inquiry the additional information that Officer Fishburn testified she orally conveyed to the magistrate. The Court found that the warrant to search Luong's home was not supported by probable cause and that the underlying affidavit was so lacking in indicia of probable cause that it was not objectively reasonable for an officer to rely on the warrant that issued. Accordingly, the Court issued an order suppressing the evidence seized from Luong's residence and storage locker. The government now appeals that order.

## II.   STANDARD OF REVIEW

We review de novo whether the good faith exception to the exclusionary rule applies to this search. *United States v. Hove*, 848 F.2d 137, 139 (9th Cir. 1988).

## III.   DISCUSSION

[1] For a search warrant to issue, the Fourth Amendment requires that there be "probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. Probable cause exists when, under the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The government concedes that the warrant here was not supported by probable cause, and that the search of Luong's residence was therefore unconstitutional. However, the government maintains that suppression of the fruits of this unconstitutional search is unnecessary because the officers

relied on the warrant in good faith, as set forth in *United States v. Leon*, 468 U.S. 897 (1984).

**[2]** In *Leon*, the Supreme Court announced a "good faith" exception to the application of the exclusionary rule. *Id.* at 922-23. Working from the premise that the exclusionary rule is a judicially created, as opposed to constitutionally required, remedy for Fourth Amendment violations, the Court reasoned that where police conduct is "pursued in complete good faith," the rule's deterrent function "loses much of its force." *Id.* at 919 (quoting *United States v. Peltier*, 422 U.S. 531, 539 (1975) (internal quotation marks omitted)). As such, the Court concluded that the exclusionary rule should not bar the government's introduction of evidence obtained by officers acting in objectively reasonable reliance on a search warrant that is subsequently invalidated. *Id.* at 918-21.

The Court stressed that the good faith test is an objective one. We ask not what the executing officer believed, or could have believed, but "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.* at 922 n.23; *United States v. Clark*, 31 F.3d 831, 835 (9th Cir. 1994). While this inquiry is necessarily tied to the facts of each case, the Supreme Court has identified at least four situations in which reliance on a warrant cannot be considered objectively reasonable, and therefore the good faith exception cannot apply: (1) when the affiant knowingly or recklessly misleads the judge with false information; (2) when the judge wholly abandons his or her neutral role; (3) when the affidavit is so lacking in indicia of probable cause that official belief in its existence is objectively unreasonable; and (4) when the warrant is so facially deficient that executing officers cannot reasonably presume it to be valid (i.e., it fails to specify the place to be searched or the things to be seized). *See Leon*, 468 U.S. at 914, 923; *United States v. Johns*, 948 F.2d 599, 604-05 (9th Cir. 1991). The third situation is the one at issue in this case, and it is the inquiry to which we now turn.

We begin by examining the sufficiency of Officer Fishburn's affidavit and then consider two other factors the government argues should be taken into account in determining the applicability of the good faith exception in this case: time pressure that Officer Fishburn experienced while preparing the warrant, and additional indicia of probable cause that Officer Fishburn orally conveyed to the magistrate but failed to include in her affidavit.

## A.   The Sufficiency of the Affidavit

**[3]** *Leon* established that for the good faith exception to apply, the officer's affidavit must establish at least a colorable argument for probable cause. *See Leon*, 468 U.S. at 923; *Hove*, 848 F.2d at 140. The Supreme Court framed the inquiry as whether the affidavit is "sufficient to create disagreement among thoughtful and competent judges as to the existence of probable cause." *Leon*, 468 U.S. at 926; *United States v. Fowlie*, 24 F.3d 1059, 1067 (9th Cir. 1994) (internal quotation marks omitted). The affidavit here fails to meet this threshold showing. Unlike other affidavits that this Circuit has upheld under the good faith exception, *see*, *e.g.*, *United States v. Huggins*, 299 F.3d 1039 (9th Cir. 2002); *Clark*, 31 F.3d 831; *Fowlie*, 24 F.3d 1059, the instant affidavit contains no appreciable indicia of probable cause.

**[4]** A critical deficiency in the affidavit is that it relies on an unverified tip as the lynchpin for its theory of probable cause. As we have repeatedly held, for an anonymous tip to be accorded any weight, "officers must provide some basis to believe that the tip is true." *Clark*, 31 F.3d at 834. "[T]he tip must include a 'range of details,' and it must predict future actions by the suspect that are subsequently corroborated by the police." *United States v. Morales*, 252 F.3d 1070, 1075 (9th Cir. 2001). "Mere confirmation of innocent static details in an anonymous tip does not constitute corroboration." *Clark*, 31 F.3d at 834. Therefore, in this case, for the DEA's tip to be given any weight, the affidavit should have estab-

lished, at a minimum, a reasonable inference that Jao is the chemist identified in the tip and that the agents in fact identified Jao. Otherwise, the tip fails to provide any predictive information about Jao — let alone the "range of details" required by *Morales* — for the police to corroborate during their surveillance.

[5] Here, although we can reasonably infer from the affidavit that Jao flew to Los Angeles on August 1, 2003, the affidavit fails to identify Jao as the "suspected suspect known as a chemist." The affidavit neither describes the suspect (for example, by name or physical description), nor identifies the basis upon which Jao, as opposed to any other passenger arriving that day, was identified and targeted. The affidavit fails to set forth a factual basis for linking Jao to the allegations contained in the tip. Beyond the mere presence of a chemist on a plane, it also lacks any predictive information, the occurrence of which would verify the tip.

Although the government argues that Luong and Jao's comings and goings from the house to the backyard support a theory that methamphetamine production was underway in the garage, the affidavit does not allege (let alone set forth evidence) that methamphetamine operations are commonly set up in residential yards, or that Luong's garage was accessible through the backyard. The affidavit does not assert that officers saw a vacuum pump at the residence, only that such a pump is commonly used with a high pressure hose. There is also no evidence that the hose was obtained from the backyard or the garage, or — despite seven additional hours of surveillance — that the fitting purchased at Home Depot was ever taken into the backyard.

## B.  Exigent Circumstances

[6] The government raises two additional arguments regarding the application of the good faith exception in this case. The first argument concerns the relevance of exigent cir-

cumstances to the good faith inquiry. While the government concedes that Officer Fishburn's affidavit is far from perfect, it argues that once the exigency of the situation and the technical difficulties that Officer Fishburn encountered are taken into account, it was objectively reasonable for the officers to rely on the warrant that issued. This Court first held in *United States v. Weber* that it would consider any time pressure that the affiant was under in determining the applicability of the good faith exception. 923 F.2d 1338, 1346 (9th Cir. 1990); *see also United States v. Ramos*, 923 F.2d 1346, 1355, n.18 (9th Cir. 1991) (considering omission of certain facts from affidavit reasonable when applying good faith exception, given affiant's time constraint), *overruled on other grounds by United States v. Ruiz*, 257 F.3d 1030 (9th Cir. 2001).

**[7]** Though this Court takes time pressure into account, the facts here do not favor application of an exception based on exigency. First of all, the officers waited seven hours after surveilling Jao and Luong at Home Depot to obtain the warrant, even though the two men's trip to Home Depot was the last observation recorded in the officers' affidavit. With respect to the technical difficulties encountered in typing the affidavit, we note that Officer Fishburn testified that she could have continued typing despite her hand injury or asked a member of her team to type for her. The agents also complained of a delay in getting the warrant to the judge, owing to printing and faxing problems. But even after the warrant was signed and nighttime service was authorized, the officers waited three hours before executing the warrant. Given these facts, we conclude that any exigencies confronting the officers in this case do not alter our overall conclusion that the good faith exception does not apply.

## C.   Extrinsic Evidence of Probable Cause

Finally, the government argues that we may consider evidence of facts not contained in the affidavit to demonstrate that the officers acted in good faith. The government relies on

authority from other circuits to support this argument, including *United States v. Legg*, 18 F.3d 240, 243-44 (4th Cir. 1994) (considering oral unrecorded answers to magistrate's questions to establish objectively reasonable reliance on warrant), and *United States v. Maggitt*, 778 F.2d 1029, 1036 (5th Cir. 1985) (allowing same in dicta).

**[8]** On the facts of this case, where the underlying affidavit is entirely lacking in indicia of probable cause, we reject the government's invitation to look to facts orally conveyed to the magistrate in order to generate the colorable theory of probable cause. *Leon* clearly and unequivocally states that when the affidavit itself is entirely lacking in indicia of probable cause, it cannot be said that the officer acted in good faith in relying on a warrant that issues. That is the precise situation we have in this case.

**[9]** This Court has repeatedly held that "[a]ll data necessary to show probable cause for the issuance of a search warrant must be contained within the four corners of a written affidavit given under oath." *United States v. Gourde*, 440 F.3d 1065, 1067 (9th Cir. 2006) (en banc) (quoting *United States v. Anderson*, 453 F.2d 174, 175 (9th Cir. 1971) (internal quotation marks omitted)). Where the affidavit itself lacks *all* indicia of probable cause, it would unduly undermine the foregoing rule to permit extrinsic indicia of probable cause to be presented through an unsworn, unrecorded oral colloquy. Related to the foregoing, the Constitution also requires that probable cause be established "by Oath or affirmation." If unsworn, unrecorded oral colloquies, which may not be used to establish probable cause, *are* admissible to establish good faith, the constitutional and prudential standards for showing probable cause will be undermined. In effect, the good faith exception would swallow the Fourth Amendment rule.

**[10]** Given that the facts of this case fall squarely within the situation explicitly identified in *Leon* as one in which the

good faith exception does not apply, we need not inquire further. The good faith exception does not apply in this case.

## IV.   CONCLUSION

Because the evidence against Luong was obtained without a warrant based on probable cause, and because the good faith exception to the warrant requirement does not apply, we accordingly **AFFIRM** the decision of the District Court.

---

CALLAHAN, Circuit Judge, dissenting:

I dissent because *United States v. Leon*, 468 U.S. 897 (1984), our own precedent, and authority from our sister circuits support a holding that extrinsic evidence may be considered when determining whether the good faith exception to the application of the exclusionary rule applies. When the extrinsic evidence is considered here, sufficient indicia of probable cause and objective good faith reliance on the search warrant exists to support the application of the good faith exception to the exclusionary rule.

While *Leon* explained that the good faith exception does not apply in certain circumstances, including when the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," 468 U.S. at 923 (quoting *Brown v. Illinois*, 422 U.S. at 590, 610-611 (1975)) (Powell, J., concurring in part), it also stated that "all of the circumstances— including whether the warrant application had previously been rejected by a different magistrate— may be considered" in the good faith inquiry. *Id*. at 922, n. 23. Moreover, in discussing the deterrent effect of the exclusionary rule, *Leon* explained that a police officer generally should be able to rely on a judge's probable cause determination because "it is the magistrate's responsibility to determine whether the officer's allegations establish probable cause." *Id*.

at 921. Because Agent Fishburn provided the superior court judge with additional facts to support a "colorable" probable cause determination, *see United States v. Hove*, 848 F.2d 137, 140 (9th Cir. 1988), and because Agent Fishburn relied on the judge's probable cause determination in objective good faith, I would apply the good faith exception to the application of the exclusionary rule here and reverse the district court's suppression order.

We have held that extrinsic evidence of time pressure may be considered when determining whether the *Leon* good faith exception applies to a deficient "bare bones" affidavit. *See United States v. Weber*, 923 F.2d 1338, 1346 (9th Cir. 1991). In *Weber*, we considered evidence extrinsic to the four corners of the affidavit to determine whether the warrant was obtained reasonably. We ultimately determined that the government had complete control over the timing of the search, and accordingly held that the warrant was not reasonably obtained under *Leon*. Although *Weber* did not address a court's consideration of information known to both the affiant and the magistrate supporting a probable cause determination in the good faith equation, the case is nevertheless significant because the extrinsic evidence in *Weber* was considered where, like here, the affidavit lacked an indicia of probable cause. *Id*. at 1346 (describing affidavit as being "the kind of 'bare bones' affidavit that is deficient under *Leon*").

In *Hove*, we concluded that the affidavit there was so lacking in indicia of probable cause that the *Leon* good faith exception to the exclusionary rule was not applicable. Hove, 848 F.2d at 140. We also declined to consider additional facts known to the officer but not conveyed to the magistrate when reviewing the affidavit for indicia of probable cause. However, we did not base our declination on the deficiency of the affidavit, but rather we reasoned that the additional facts could not be considered because the *Leon* test "is based solely on facts presented to the magistrate," and "*Leon* did does not extend . . . to allow the consideration of facts known only to

an officer and not presented to the magistrate." *Id*. While *Hove* prevents us from considering facts known to the officer but not presented to the magistrate, it nevertheless implies that consideration of additional facts known to both the affiant and judge would be appropriate in the *Leon* analysis—even when faced with a "bare bones" affidavit.

Other circuit courts have held accordingly. In *United States v. Frazier*, 423 F.3d 526, 535-36 (6th Cir. 2005), the Sixth Circuit held that a court may consider information that the affiant told the magistrate but did not include in the affidavit when determining whether the affidavit was so lacking in probable cause as to render official belief in its existence entirely unreasonable under *Leon*. The Sixth Circuit relied on *Leon*'s instruction to lower courts to consider all of the circumstances in determining an officer's good faith, "including whether the warrant application had previously been rejected by a different magistrate," explaining that by considering whether another magistrate had rejected a probable cause affidavit, a court necessarily would have to look beyond the four corners of the affidavit. *Id*. at 534.

In *United States v. Legg*, 18 F.3d 240, 243-44 (4th Cir. 1994), the Fourth Circuit held that even if an affidavit lacked any indicia of probable cause, contemporaneous oral probable cause statements made to the judge who signed the warrant could be considered in applying *Leon*'s good faith exception. The *Legg* court rejected the defendant's argument that language in *Leon*—concluding that the good faith exception to the exclusionary rule does not apply when the affidavit supporting the warrant lacks sufficient indicia of probable cause—categorically limited the good faith inquiry to the warrant itself, because *Leon* did not address whether an officer's reliance on statements to a magistrate, in conjunction with a deficient affidavit, could be reasonable. *Id*. at 243, n. 1. The Fourth Circuit reasoned that because the good faith analysis focuses on the reasonableness of the officer's reliance on the warrant, the totality of the circumstances should be consid-

ered in determining this reasonableness. *Id*. The officer was acting reasonably in *Legg* because he was relying on all of the information he provided to the magistrate, both in the affidavit and orally, when he executed the warrant. *Id*. at 244.

I find the Fourth and Sixth Circuits' reasoning compelling and agree with their holdings that facts known to both the affiant and the judge may be considered in *Leon*'s good faith analysis, regardless of the extent of the affidavit's deficiency. The holdings in *Frazier* and *Legg* are also supported by *Weber* and *Hove* because our cases recognize that it is appropriate to consider extrinsic evidence when undertaking a *Leon* good faith determination, "despite the complete lack of any indicia of probable cause in the affidavit." *Hove*, 848 F.2d at 140 (internal quotation marks omitted); *see also Weber*, 923 F.2d at 1346. Accordingly, I would follow our sister circuits and consider the oral statements that Agent Fishburn provided to the superior court judge during the preparation of the warrant when making a good faith determination under *Leon*.

Agent Fishburn told the superior court judge that she obtained the information about Jao—that he was a chemist flying to the United States via LAX to manufacture methamphetamine—from a wiretap initiated out of the DEA's Hong Kong office. She also told the judge that Jao was identified coming through customs at LAX by his passport, and that she observed counter-surveillance driving during Jao and Luong's trip to the Home Depot.

Considering this additional information, the affidavit was not so lacking in probable cause as to render official belief in its existence unreasonable. The tip from the DEA in Hong Kong—that Jao was flying to the United States to assist in methamphetamine production—was supported by an accurate corroboration of future activity to carry out the criminal activity and therefore may be deemed valid. Specifically, Jao's overseas trip to the United States is a type of "significant future activity" contemplated under *Illinois v. Gates*, 462 U.S.

at 225-27 (1983) (anonymous letter describing travel to buy drugs, coupled with corroboration of predicted travel, established probable cause), and *United States v. Diaz-Rosas*, 13 F.3d 1305, 1307 (9th Cir. 1994) (informant's tip of vehicle's travel route corroborated by police observation established probable cause), to support the tip's reliability.

The tip, in addition to the surveillance of Luong and Jao at Luong's residence, the counter-surveillance driving, and the purchase of the hose adaptor fitting at The Home Depot, provided "a colorable showing of probable cause" that evidence of methamphetamine manufacturing might be found at Luong's residence. *Hove*, 848 F.2d at 140. Therefore, Agent Fishburn was not objectively unreasonable by relying on the superior court judge's probable cause determination.

In sum, the good faith exception to the exclusionary rule is designed to save unconstitutionally obtained evidence from suppression when suppression would not deter police misconduct. *See Leon*, 468 U.S. at 907-13. Here, Agent Fishburn acted objectively reasonably by relying on the superior court judge's probable cause determination. Penalizing her for the superior court's error would not deter Fourth Amendment violations. *See id*. at 921. Accordingly, I respectfully dissent.