**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Jaime Galvan MORALES and Octavio Alvarez Ruelas, Defendants– Appellees.**

No. 00–30191

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 8, 2001

Filed June 7, 2001

Mark C. Prothero, Spokane, Washington, for defendant-appellee Jaime Galvan Morales, and Bevan J. Maxey, Spokane, Washington, for defendant-appellee Octavio Alvarez Ruelas.

Before: PREGERSON, THOMAS, and RONALD M. GOULD, Circuit Judges.

PREGERSON, Circuit Judge:

The central issue in this case is whether an anonymous tip provided law enforcement officers with reasonable suspicion to believe that the defendants were engaged in criminal activity. Because we agree with the district court that the tip did not exhibit sufficient "indicia of reliability" to establish reasonable suspicion, we affirm the district court's order granting the defendants' motion to suppress.

## I.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

At around 7:30 p.m. on February 15, 2000, the Mineral County, Montana sheriff's department received an "Attempt to Locate" (ATL) issued by law enforcement in Spokane, Washington. The ATL informed officers east of Spokane that the Spokane police department had received a tip that a white 1989 Ford Taurus, bearing Washington license plate number 772 JJY, was transporting a pound of methamphetamine from Spokane to Missoula, Montana. The ATL stated that two male Hispanics were in the car, and that they had left Spokane around 5:00 p.m. Pacific Standard Time (6:00 p.m. Mountain Standard Time). The ATL did not include information about the tipster's identity or reliabili-

Josh Van de Wetering, Assistant United States Attorney, Missoula, Montana, for the plaintiff-appellant.

ty, or information about the basis of the tipster's knowledge.[1] The tipster did not provide information about the Taurus's route, but the Mineral County deputies took up posts along Interstate–90—the most probable route from Spokane to Missoula—at about 8:15 or 8:30 p.m. Mountain Time.

At about 9:00 p.m., Deputy Michael Toth spotted a white Ford Taurus traveling east through Mineral County. He could tell that the Taurus had two occupants, but he was unable to tell whether the occupants were "Hispanic." The license plate on the car was not Washington 772 JJY as the tipster suggested, but Washington 885 KFW. Deputy Toth ran a plate check and learned that 885 KFW was a replacement number for 772 JJY. Based on this information, Deputy Toth concluded that he was following the car identified by the tipster, and he continued to trail the car.

The car traveled approximately 32 miles without violating any traffic laws ·or behaving in a suspicious manner. The Taurus sped up and slowed down at times, but Deputy Toth testified that this conduct did not violate the traffic laws. Deputy Toth consulted with Sergeant Mike Johnson over the radio throughout the encounter. Sergeant Johnson also followed the suspected vehicle in a separate patrol car. Sergeant Johnson and Deputy Toth agreed that the ATL alone was not enough to stop

the car, and they explored various avenues to develop probable cause for a traffic stop.[2]

The officers finally decided to perform a traffic stop because the Taurus had tinted windows. Over the radio, a Montana Highway Patrol sergeant told the officers that tinted windows were illegal in Montana. In fact, tinted windows are only illegal on vehicles that must be registered in Montana. Thus, as the government concedes in its brief, "[t]he advice of the Highway Patrol Sergeant was bad advice." Relying on this advice, the officers stopped the Taurus at 9:30 p.m.

The officers detained the driver, Octavio Alvarez–Ruelas ("Ruelas"), and his passenger, Jaime Galvan Morales ("Morales"), until a narcotics detection canine ("sniff dog") could be brought to the scene. All warrant checks on Ruelas and Morales came back negative. The officers handcuffed Ruelas and Morales, and placed them in the back of one of the patrol cars. Deputy Toth surreptitiously placed a tape recorder in the patrol car in order to record the defendants' conversation. While in the patrol car, Ruelas and Morales conversed in Spanish, and their conversation was recorded.

The sniff dog arrived about forty minutes after the police stopped the Taurus. The sniff dog alerted to the presence of

---

1. Deputy Michael Toth, who pulled over the defendants' vehicle, testified at the suppression hearing. During his direct examination, Deputy Toth did not mention whether he had any information about the tipster's reliability. On cross-examination, when asked about the ATL, Deputy Toth again made no mention of the tipster's reliability. On redirect, the Assistant United States Attorney asked Deputy Toth whether he had any information about the tipster's reliability. He replied that the dispatcher informed him that the tip came from a reliable informant. But when the district court asked Deputy Toth whether the ATL provided information about the infor-

mant or the informant's reliability, Deputy Toth responded that it did not.

2. Sergeant Johnson was the ranking officer on the evening in question and testified that it was his responsibility to decide whether to stop the Taurus. When asked whether he believed he had reasonable suspicion at the time he received the ATL and spotted the Taurus, Sergeant Johnson testified that "[n]o, I didn't feel we had enough *probable cause* to pull the vehicle over based on my knowledge of what our county attorney would have thought would be appropriate probable cause." (Emphasis added).

narcotics in the trunk and the passenger door. The officers impounded the car, and released the defendants in the nearby town of Alberton, Montana. The next day, the officers obtained a warrant to search the car. While searching the car, they found one-half pound of methamphetamine. The officers located the defendants in the city of St. Regis, Montana, and arrested them on warrants.

The defendants were charged with possession of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). The defendants filed a joint motion to suppress the drugs. Defendant Ruelas filed a separate motion to suppress the tape recording, which was made while the defendants conversed in the patrol car. After a suppression hearing, the district court ordered the suppression of all evidence seized after the initial stop. The district court concluded that the initial stop of the Taurus was unconstitutional because: (1) the officers' good faith but mistaken belief that tinted windows were illegal in Montana did not justify the stop under the Fourth Amendment; and (2) the tip alone did not support a reasonable suspicion that criminal activity was afoot. Because the district court found that the initial stop was unconstitutional, it suppressed both the drugs and the tape recording. The government now appeals.

## II.

### STANDARD OF REVIEW

"We review de novo the lawfulness of a search or seizure, and we review for clear error the district court's underlying findings of fact." *United States v. Wallace*, 213 F.3d 1216, 1219 (9th Cir.2000) (citing *United States v. Hudson*, 100 F.3d 1409, 1414 (9th Cir.1996)).

## III.

### DISCUSSION

■ The threshold inquiry is whether the officers' decision to stop the defendants violated the Fourth Amendment. If the initial stop was unconstitutional, then all evidence seized as a result of the stop must be suppressed as the fruit of the poisonous tree. *See Wong Sun v. United States*, 371 U.S. 471, 484–85, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

■ Under *Terry v. Ohio* and its progeny, law enforcement officers must have at least a reasonable suspicion of criminal activity before stopping a suspect. *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979) (extending the holding of *Terry* to car stops). Reasonable suspicion is "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Thomas*, 211 F.3d 1186, 1189 (9th Cir.2000) (internal quotation marks and citation omitted). "Reasonable suspicion requires specific, articulable facts which, together with 'objective and reasonable' inferences, form a basis for suspecting that a particular person is engaged in criminal conduct." *Id.* (citation omitted).

■ The government does not argue on appeal that the officers were justified in stopping the Taurus because they believed in good faith that tinted windows were illegal in Montana.[3] Rather, the government's sole argument on appeal is that the tip provided sufficient reasonable suspicion to stop the Taurus.

---

**3.** The government made this argument to the district court, which correctly rejected it. *See United States v. Lopez–Soto*, 205 F.3d 1101, 1106 (9th Cir.2000) (good faith but mistaken belief that motorist violated traffic laws does not justify stop under the Fourth Amendment).

■ Supreme Court case law makes clear that an officer's subjective intent in making a stop is not dispositive of the question of whether the stop is constitutional. *Whren v. United States,* 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) (holding that reasonableness of a stop does not depend on the subjective motivations of the police officers). So long as there is an objectively reasonable basis, a stop is permitted under the Fourth Amendment. *Id.; Wallace,* 213 F.3d at 1219 ("The fact that the alleged traffic violation is a pretext for the stop is irrelevant, so long as the objective circumstances justify the stop."). Accordingly, if the tip did, from an objective standpoint, establish a reasonable suspicion that the defendants were transporting methamphetamine, then the stop was constitutional.

■ In certain circumstances, an anonymous tip can serve as the basis for reasonable suspicion. *Alabama v. White,* 496 U.S. 325, 327–28, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). Even though the record in this case does not reflect whether the tip came from a known or unknown source, this circuit's case law establishes that the tip should be treated as an anonymous tip because the ATL did not include information about the tip's source. *Thomas,* 211 F.3d at 1190 n. 3. In *Thomas,* the FBI instructed the sheriff's department to pay attention to a certain house in Tucson because there was a suspicion that the house contained narcotics. 211 F.3d at 1188. This court held that the sheriff's department could not simply defer to the FBI's tip without itself establishing the articulable facts upon which the tip was based. *Id.* at 1189. The government conceded that because the FBI did not provide the sheriff's department with information about the basis of its tip, the tip should be treated as an anonymous tip. *Id.* at 1190 n. 3. Similarly, because the ATL here did not provide information about the tip's source, we will treat it as an anonymous tip.

In the landmark case of *Illinois v. Gates,* the Supreme Court adopted a "totality of the circumstances" approach to determine whether an anonymous tip satisfies probable cause.[4] 462 U.S. 213, 233, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Although *Gates* discarded the "two-pronged" approach established by *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), the factors "considered critical" under those cases—an informant's veracity, reliability, and basis of knowledge—remain "highly relevant" to the inquiry. *White,* 496 U.S. at 328, 110 S.Ct. 2412.

■ An anonymous tip standing alone does not demonstrate an informant's veracity or reliability because an anonymous tipster cannot be held accountable if he or she provides inaccurate information, and the police cannot assess the tipster's reputation. *Florida v. J.L.,* 529 U.S. 266, 270, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000). The Supreme Court, therefore, requires "something more" than the anonymous tip alone to establish reasonable suspicion that criminal activity is afoot. *White,* 496 U.S. at 329, 110 S.Ct. 2412. As the Supreme Court explained in *Alabama v. White,* in order for an anonymous tip to have sufficient "indicia of reliability" to serve as the

---

**4.** Even though *Gates* was decided in the probable cause context, the *Gates* analysis applies to determinations of reasonable suspicion. *Alabama v. White,* 496 U.S. 325, 329, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990) ("These facts are also relevant in the reasonable suspicion context, although allowance must be made in applying them for the lesser showing required to meet that standard.").

basis for a *Terry* stop, the tip must include a "range of details," and it must predict future actions by the suspect that are subsequently corroborated by the police. *Id.*

In *Gates,* the police received an anonymous letter stating that a husband and wife sold drugs. The letter described in detail their drug operation: the wife would drive to Florida and load the car with drugs while the husband would fly down and drive the car back. Police observation confirmed most of the letter's predictions. The Court held that the letter itself gave no indication that the tipster was reliable, or that there was a basis for the tipster's knowledge. *Gates,* 462 U.S. at 227, 103 S.Ct. 2317. Nonetheless, the Court held that the tip was reliable under the totality of the circumstances because independent police observation confirmed almost all of the details that the tipster had provided. *Id.* at 244, 103 S.Ct. 2317. Thus, "[t]o the *Gates* Court, the officer's corroborative efforts were dispositive: '[B]ecause an informant is right about some things he is more probably right about other facts ... including the claims regarding the [defendant's] illegal activity." *United States v. Fixen,* 780 F.2d 1434, 1437 (9th Cir.1986) (quoting *Gates,* 462 U.S. at 244, 103 S.Ct. 2317) (internal quotation marks and citation omitted).

In *White,* the police received an anonymous tip that a woman named Vanessa White would be leaving 235–C Lynwood Terrace Apartments at a particular time in a brown Plymouth station wagon with the right taillight lens broken, that she would be going to Dobey's Motel, and that she would be in possession of an ounce of cocaine inside a brown leather attache case. 496 U.S. at 327, 110 S.Ct. 2412. The police subsequently observed a woman leave the 235 building and get into a brown Plymouth with a broken right taillight. *Id.* They followed the Plymouth as it drove the most direct route to Dobey's Motel,

which was four miles away. When the Plymouth pulled onto the street where Dobey's Motel was located, the police stopped the car and asked if they could search it. She consented, and the police found cocaine in a brown attache case. *Id.*

The Court held that the tip standing alone was insufficient to establish reasonable suspicion that the suspect was engaged in criminal activity. *Id.* at 329, 110 S.Ct. 2412. However, the police corroborated almost every detail contained in the tip, including the predictions that the suspect would leave the building, get into her car, and drive to the motel. The Court held that even though the police stopped the suspect before she arrived at the motel, they "sufficiently corroborated" her destination because the route was only four miles, and she was stopped on the street where the motel was located. *Id.* at 331, 110 S.Ct. 2412.

The Court found particularly persuasive that the tip not only provided an accurate "range of details" relating to the "facts and conditions existing at the time of the tip," but also relating to "future actions of third parties not easily predicted." *Id.* at 332, 110 S.Ct. 2412 (quoting *Gates,* 462 U.S. at 245, 103 S.Ct. 2317). The tip not only accurately described the suspect and her car, but it also accurately predicted that she would leave the apartment building, get into her car, and drive to a motel. "What was important was the caller's ability to predict respondent's future behavior, because it demonstrated inside information—a special familiarity with respondent's affairs." *Id.* at 332, 110 S.Ct. 2412. Because the tip provided a range of details predicting future actions that were corroborated by the police, the Supreme Court held that the tip exhibited sufficient "indicia of reliability" to justify the investigative stop. *Id.*

In contrast to *White* is the recent Supreme Court case of *Florida v. J.L.*, 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000). In *J.L.*, the police received a tip from an anonymous caller that a young black male, standing at a particular bus stop and wearing a plaid shirt, was carrying a gun. *Id.* at 268, 120 S.Ct. 1375. The police arrived at the bus stop and saw a black male wearing a plaid shirt. Apart from the tip, the police had no reason to believe that he was engaged in criminal activity. The police frisked the man, and seized a gun from his pocket.

The Court held that the tip did not have sufficient "indicia of reliability" to support a reasonable suspicion that the man at the bus stop had a gun. *Id.* at 270, 120 S.Ct. 1375. Unlike *White*, where the tipster accurately predicted the suspect's movements, the anonymous call about the man at the bus stop provided no predictive information. *Id.* at 271, 120 S.Ct. 1375. All that the anonymous caller described was what the man looked like and what he was wearing. Such a tip revealed only that the caller could reliably identify the suspect, not that the caller had reliable information with respect to concealed criminal conduct. *Id.* at 272, 120 S.Ct. 1375.

Thus, what the Supreme Court teaches in *Gates*, *White*, and *J.L.* is that in order for an anonymous tip to serve as the basis for reasonable suspicion: (1) the tip must include a "range of details;" (2) the tip cannot simply describe easily observed facts and conditions, but must predict the suspect's future movements; and (3) the future movements must be corroborated by independent police observation.

To recapitulate, the tip here indicated that a white 1989 Ford Taurus, bearing Washington license plate number 772 JJY, was transporting a pound of methamphetamine from Spokane, Washington to Missoula, Montana. The tip also indicated that the car was occupied by two male Hispanics, who had left Spokane around 5:00 p.m. The ATL did not include information about the tipster's identity or reliability, or information about the basis of the tipster's knowledge.[5]

This tip is more reliable than the tip in *J.L.* because in that case, the tip only described facts and conditions, such as the suspect's race, sex, and clothing. This tip not only describes facts and conditions, such as the make of the car, its license plate number, and its occupants, but it also predicts a future movement—that the car would travel from Spokane to Missoula.

This tip is not as detailed as the tip in *White* because the tipster in *White* identified the precise address from which the suspect would leave, as well as where she would arrive. The tip here speaks about location in more general terms by only identifying "Spokane" and "Missoula." This general prediction does not demonstrate, to the same extent as in *White*, that the informant had special knowledge of the defendants' itinerary. The tipster in *White* also identified more future movements than the tipster here. The tipster in *White* predicted that the suspect would (1) come out of a building, (2) get into a car, (3) and drive to a motel. Here, the tipster predicted only that the defendants would drive from Spokane to Missoula. Similarly, the tip here is not as detailed as

---

**5.** The record is unclear as to whether Deputy Toth knew that the informant was "reliable." *See supra* note 1. However, even if the dispatcher told Deputy Toth that the informant was reliable, he could not have simply deferred to this assertion. *Thomas*, 211 F.3d at 1189 ("If a police officer relies on information from another government agency in making an investigatory stop, that information must itself be based on reasonable suspicion. The officer cannot simply defer to the other agency's suspicion without establishing the articulable facts on which that suspicion is based.").

the tip in *Gates,* which predicted a wide range of future movements, such as the wife driving to Florida, the husband flying to Florida, and the husband driving the car back from Florida.

Aside from the lack of detail in the tip, the officers also failed to corroborate that the defendants were, in fact, going to Missoula (or, for that matter, that they had come from Spokane). The police stopped the defendants near Alberton, Montana, which is about 30 miles shy of Missoula. As the district court observed, by stopping the car before it reached Missoula, the police lost their opportunity to corroborate this key detail of the tip. The officers easily could have followed the car until it reached Missoula. *Cf. United States v. Delgadillo–Velasquez,* 856 F.2d 1292, 1298 (9th Cir.1988) (anonymous tip did not establish probable cause where police easily could have taken steps to corroborate the tip).

In *White,* the Court held that the police "sufficiently corroborated" the suspect's destination even though they stopped her before she reached the motel. In that case, however, the route from the apartment building to the motel was only four miles long, and the police stopped the suspect after she got onto the street on which the motel was located. By contrast, Spokane and Missoula are separated by a distance of approximately 200 miles, and the police stopped the defendants' car about thirty miles outside of Missoula. Thus, the police here did not sufficiently corroborate the defendants' destination.

As to the other details in the tip, the police corroborated that a 1989 Ford Taurus containing two passengers was on the Interstate–90 heading in the direction of Missoula. Their independent investigation also revealed that the tipster had some "inside knowledge" because the tipster identified the defendants' car using an alternative license plate number. This as-

pect of the tip suggests that the tipster had knowledge of the defendants that could not come from mere observation of the defendants in the car. It could further suggest that the tipster's acquaintance with the vehicle extended over a period of time. As the district court pointed out, however, the tipster's ability to identify the car does not demonstrate that he or she had knowledge of concealed criminal activity. Moreover, the fact that the tipster gave an alternative license plate number could indicate that his or her information was not current, and therefore less reliable.

In sum, we agree with the district court's well-reasoned conclusion that the tip here did not possess sufficient "indicia of reliability" to justify an investigative stop of the defendants' car. The police missed their opportunity to confirm that the defendants were going to Missoula. This case is weaker than *White,* which the Court in *J.L.* described as "borderline" and a "close case." *J.L.,* 529 U.S. at 271, 120 S.Ct. 1375. Because the officers here did not have reasonable suspicion to believe that the defendants were engaged in criminal activity, their stop of the Taurus was unconstitutional. Accordingly, all evidence seized as a result of the stop should be suppressed. *Wong Sun,* 371 U.S. at 484–85, 83 S.Ct. 407.

### IV.

### CONCLUSION

We affirm the district court's order granting the defendants' joint motion to suppress the drugs and Ruelas's separate motion to suppress the tape recording. The officers' initial stop of the Taurus was illegal because the tip did not have sufficient "indicia of reliability" to provide reasonable suspicion that the defendants were engaged in illegal conduct. Accordingly,

all evidence seized as a result of the stop should be suppressed.

AFFIRMED.