**UNITED STATES of America,**
**Plaintiff—Appellee,**

v.

**Russell Alan SMITH, Defendant—**
**Appellant.**

**No. 04–30388.**

United States Court of Appeals,
Ninth Circuit.

ed by Ninth Circuit Rule 36–3.

Submitted June 10, 2005.*

Decided June 14, 2005.

James P. Hagarty, Esq., USYA—Office of the U.S. Attorney, Yakima, WA, for Plaintiff—Appellee.

Rebecca L. Pennell, Esq., FDWAID—Federal Defenders of Eastern Washington & Idaho, Yakima, WA, for Defendant—Appellant.

Before: THOMPSON, MCKEOWN, and GOULD, Circuit Judges.

## MEMORANDUM **

Russell Alan Smith appeals his conviction for distribution of more than 50 grams of a substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 841(a)(1).  On appeal, Smith argues, first, that probable cause did not support a warrant to search a residence at 506 E. South Street in Mabton, Washington, and, second, that the government violated his rights to due process and compulsory process by deporting two potential witnesses before defense counsel had the opportunity to interview them.  We have

---

* This panel unanimously finds this case suitable for decision without oral argument.  *See* Fed. R.App. P. 34(a)(2).

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

This case resulted from an investigation into a drug distribution conspiracy that culminated in the search of homes at 506 E. South Street and 820 Pine Street in Mabton, Washington. The affidavit in support of the search warrant for 506 E. South Street reported that the police had obtained and corroborated information from two confidential informants: CS 02–023 and CS 03–012. The affidavit stated that both CS 02–023 and CS 03–012 were reliable confidential sources who had previously given truthful information to law enforcement. CS 02–023 tipped the police that a man named Michael Oden Foster was involved in illegal drug distribution and firearms violations. To corroborate this information, the police, through CS 03–012, conducted five controlled buys of cocaine and methamphetamine from Foster at 820 Pine Street. On one buy, Foster did not have methamphetamine and had to obtain it from his source. Foster made a phone call and then left 820 Pine Street. The police followed Foster and observed him entering the residence at 506 E. South Street. Foster returned to 820 Pine Street and handed 29 grams of a substance containing a detectable amount of methamphetamine to CS 03–012. CS 03–012 informed the police that Foster bought drugs from a woman named Herlinda. The police verified that "Herlinda Cobian" or "Herlinda Contreras" owned both the residence at 506 E. South Street and the vehicle parked at that address.

The police obtained warrants to search 506 E. South Street and 820 Pine Street, and proceeded to conduct a sixth controlled buy during which CS 03–012 went to 820 Pine Street to purchase methamphetamine with pre-recorded buy money. When CS 03–012 arrived, Foster again did not have any methamphetamine. Foster made a telephone call, and police next observed Smith leaving 506 E. South Street and bicycling to 820 Pine Street. When Smith arrived at 820 Pine Street, Jose de Jesus Altamirano–Perez and Alfonso Villa–Olvera were in the residence, and Foster asked them to step outside. After Foster gave the methamphetamine to CS 03–012, Altamirano–Perez and Villa–Olvera reentered the residence. Shortly thereafter, police executed the search warrants for 820 Pine Street and 506 E. South Street. At 820 Pine Street, police found Altamirano–Perez and Villa–Olvera standing by a quantity of cocaine on the kitchen table, and also found the pre-recorded buy money on the person of Smith, and $740.00 on the person of Altamirano–Perez. Prior to the filing of federal charges, the government interviewed Altamirano–Perez and Villa–Olvera, determined that they were both uninvolved in the drug distribution conspiracy and illegally present in the United States, and deported them.

■ Smith first contends that probable cause did not support the warrant to search the residence at 506 E. South Street.[1] We disagree. "Probable cause exists when there is a fair probability or substantial chance of criminal activity." *Bishop*, 264 F.3d at 924. We apply a totality-of-the-circumstances test to determine whether an affidavit supporting a warrant established probable cause to search a specific location. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *Bishop*, 264 F.3d at 924. In a case involving a confidential informant, we consider factors including the range of details provided by the tip,

---

1. We review de novo whether an affidavit written in support of a search warrant contains sufficient information to find probable cause. *United States v. Bishop*, 264 F.3d 919, 924 (9th Cir.2001).

whether the tip accurately predicted future events, and whether the tip was independently corroborated by police work. *United States v. Morales*, 252 F.3d 1070, 1076 (9th Cir.2001); *see also Gates*, 462 U.S. at 241–42, 103 S.Ct. 2317.

The totality of the circumstances surrounding the affidavit indicates that it contained sufficient information to demonstrate a "fair probability or substantial chance of criminal activity" at 506 E. South Street. *Bishop*, 264 F.3d at 924. The police obtained tips from two reliable informants and corroborated this information by conducting five controlled buys. During one of these buys, the police observed Foster leave the controlled buy location at 820 Pine Street, go to 506 E. South Street, and return with methamphetamine that he sold to CS 03–012. Finally, the police verified that Foster purchased drugs from a woman named Herlinda by confirming that Herlinda Cobian lived at 506 E. South Street. We hold that there was probable cause to believe that illegal drug production or distribution was occurring at 506 E. South Street.

■ Smith next argues that the government violated his Fifth Amendment right to due process and his Sixth Amendment right to compulsory process by deporting Altamarino–Perez and Villa–Olvera before defense counsel had the opportunity to interview these potential witnesses.[2] The government may not deport material defense witnesses to gain an unfair advantage in securing a conviction. *United States v. Valenzuela–Bernal*, 458 U.S. 858, 872–73, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982). To prove a violation of this principle, a criminal defendant must: 1) demonstrate that the government acted in bad faith, *United States v. Dring*, 930 F.2d 687, 693–94 (9th Cir.1991); and 2) make some "plausible showing" that the potential witness could have provided testimony that would have been both material and favorable to the defense, *Valenzuela–Bernal*, 458 U.S. at 867, 102 S.Ct. 3440. To demonstrate that the government acted in bad faith, the defendant must show that the government departed from its usual deportation procedures or that it deported a witness to gain a tactical advantage at trial. *Pena–Gutierrez*, 222 F.3d at 1085.

Here, Smith has not presented any evidence that would tend to show either bad faith or materiality. With respect to bad faith, there is no indication that the government departed from normal immigration procedures or that the prosecution deported Altamarino–Perez and Villa–Olvera in order to gain an unfair tactical advantage in prosecuting Smith. The government did not indict Smith until two months after Altamarino–Perez and Villa–Olvera had been deported, and, before their deportation, the government made a "good-faith determination" that Altamarino–Perez and Villa–Olvera did not possess any material evidence relevant to this case. *Valenzuela–Bernal*, 458 U.S. at 873, 102 S.Ct. 3440. With respect to materiality, Smith has not put forward any plausible theory as to how Altamarino–Perez and Villa–Olvera might have been testified at trial or as to how this testimony might have assisted the defense. Accordingly, we hold that there was no Fifth or Sixth Amendment violation in the decision not to retain Altamarino–Perez and Villa–Olvera pending the prosecution of Smith.

**AFFIRMED.**

---

**2.** We review de novo the district court decision not to dismiss an indictment for failure to retain a witness. *United States v. Pena-Gutierrez*, 222 F.3d 1080, 1085 n. 1 (9th Cir. 2000)