**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

JASON LEE JENNEN,
            *Defendant-Appellant.*

No. 09-30146

D.C. No.
2:08-CR-00081-
LRS-1

OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Lonny R. Suko, Chief District Judge, Presiding

Submitted December 8, 2009*
Seattle, Washington

Filed February 24, 2010

Before: Ronald M. Gould and Richard C. Tallman,
Circuit Judges, and Roger T. Benitez,** District Judge.

Opinion by Judge Gould

---

*The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

**The Honorable Roger T. Benitez, United States District Judge for the Southern District of California, sitting by designation.

## COUNSEL

Matthew Campbell, Federal Defenders of Eastern Washington and Idaho, Spokane, Washington, for defendant-appellant Jason Lee Jennen.

Ronald W. Skibbie, Assistant United States Attorney, Spokane, Washington, for plaintiff-appellee United States of America.

## OPINION

GOULD, Circuit Judge:

Jason Lee Jennen was convicted of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g), and was sentenced to thirty-seven months in prison. Jennen had entered a conditional guilty plea for this offense, and permissibly appeals the district court's denial of his motion to suppress evidence obtained by law enforcement during a search of his residence. He also appeals his sentence. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

# I

In October 2007, a Spokane Police Department ("SPD") detective applied for a search warrant to search Jennen's residence and person. The detective's affidavit accompanying the search warrant application provided the following information:

In early October 2007 the SPD received an anonymous tip stating that Jennen and his girlfriend were using illegal drugs, including methamphetamine and cocaine, in the presence of their children. The anonymous tip disclosed the place where Jennen resided, that Jennen had weapons and cameras and seemed to know when police were coming and would usually disappear accordingly, and that Jennen bragged about keeping dynamite under his home. On October 18, 2007, the SPD, using a confidential informant ("CI"), orchestrated a controlled purchase of methamphetamine at Jennen's residence. The CI called Jennen and ordered methamphetamine from him. Jennen directed the CI to his residence. The SPD maintained surveillance while the CI parked at Jennen's residence and made contact with two white males. The CI explained to the SPD that these two white males were Jennen and his supplier: the CI first made contact with Jennen's supplier, after which Jennen came out of his home and gave the CI a baggie of methamphetamine in exchange for the purchase money. The CI stated that Jennen lived with his girlfriend and their children, that they had surveillance cameras in their home, and that Jennen had firearms. The CI also provided Jennen's home phone number, which police records showed belonged to Jennen's girlfriend. The affidavit disclosed that the CI had been arrested for crimes of dishonesty and was receiving monetary compensation for his work, but that the CI was reliable in past investigations involving the sale of controlled substances.

Based on the above information contained in the affidavit, on October 19, 2007, a state judicial officer authorized the

search warrant. The search warrant permitted, in relevant part, the SPD to search Jennen's residence and his person for illegal drugs including methamphetamine, evidence of Jennen's involvement in the sale or distribution of drugs, and firearms.

On October 23, 2007, after the warrant was already issued, the SPD unsuccessfully attempted a second controlled purchase of methamphetamine from Jennen at his residence. The CI stated that Jennen was suspicious of activity in a field to the north and told the CI that he was "out."

On October 25, 2007, the SPD executed the search warrant at Jennen's residence. Both Jennen and his girlfriend were present, along with young children. Drug paraphernalia, packaging materials, and a substance that field-tested positive for methamphetamine were found during the search. Search of the premises also recovered a working .22 caliber semi-automatic rifle, a working bolt-action rifle, two non-functional firearms, and ammunition. Two televisions in Jennen's home were set up as surveillance monitors, showing the north and south ends of Jennen's home.

Jennen was indicted on one count of being a felon in possession of a firearm and ammunition, and one count of possession of a stolen firearm. Jennen moved to suppress the evidence obtained by law enforcement during the search, and the district court denied the motion. Jennen thereafter entered a conditional guilty plea to the crime of being a felon in possession of a firearm and ammunition, reserving the right to appeal the denial of his suppression motion and the court's sentencing ruling. At sentencing, the district court determined that Jennen's conviction for second degree assault with a deadly weapon was a conviction for a "crime of violence." The district court calculated an advisory United States Sentencing Guidelines ("Guidelines") range of thirty-seven to forty-six months and sentenced Jennen to the low end of the range. Jennen's timely appeal followed.

## II

A district court's denial of a motion to suppress is reviewed de novo and its factual findings for clear error. *United States v. Brown*, 563 F.3d 410, 414 (9th Cir. 2009). Whether or not there was probable cause supporting the issuance of a search warrant is determined by the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The existence of probable cause turns on whether the search warrant affidavit "establish[ed] a reasonable nexus between the crime or evidence and the location to be searched." *United States v. Crews*, 502 F.3d 1130, 1136-37 (9th Cir. 2007).

Jennen argues that the warrant was not based on probable cause because the information leading to the warrant was unreliable and uncorroborated and the second, failed controlled purchase—attempted after the warrant was issued—undermined probable cause.[1]

## A

[1] To uphold the issuance of a warrant, we "need only find that the issuing magistrate had a substantial basis for finding probable cause." *United States v. Chavez-Miranda*, 306 F.3d 973, 978 (9th Cir. 2002). For anonymous tips to be given weight, "officers must provide some basis to believe

---

[1]Jennen also argues that the facts in the affidavit "were not necessarily proven." Jennen misapprehends the legal standard on review of denial of a motion to suppress. Here, the existence of probable cause turns on the information disclosed in the *affidavit*. *See Crews*, 502 F.3d at 1136-37. While Jennen argues that the controlled purchase did not clearly establish that Jennen, and not his supplier, sold the methamphetamine to the CI, the affidavit provided that the CI stated it was Jennen who gave him the drugs. Jennen's argument that the affidavit should have disclosed more information about Jennen's supplier's recent guilty plea to possession of methamphetamine is not persuasive; the affidavit provided the relevant information necessary for a judicial officer to make a reasoned probable cause determination.

that the tip is true." *United States v. Clark*, 31 F.3d 831, 834 (9th Cir. 1994). For an anonymous tip to be the basis for probable cause, there must be additional evidence that shows the tip is reliable: "(1) the tip must include a range of details; (2) the tip cannot simply describe easily observed facts and conditions, but must predict the suspect's future movements; and (3) the future movements must be corroborated by independent police observation." *United States v. Morales*, 252 F.3d 1070, 1076 (9th Cir. 2001) (internal quotation marks omitted); *see also United States v. Luong*, 470 F.3d 898, 903 (9th Cir. 2006) (adopting the *Morales* standard for probable cause determinations).

**[2]** The anonymous tip here met the *Morales* standard. First, the anonymous tip included a "range of details" that were more than "easily observed facts and conditions." *See Morales*, 252 F.3d at 1076. The anonymous tip described how Jennen and his girlfriend were doing drugs in the presence of children. It disclosed where Jennen resided; the types of drugs, including methamphetamine and cocaine, being used; that Jennen possessed weapons; and that Jennen had cameras and seemed to know when police were coming. Second, the tip described the continuing illegal conduct (Jennen and his girlfriend "do drugs" and "have weapons [and] cameras") and where that illegal conduct would take place in the future (at Jennen's residence). *See id.* Third, important details disclosed in the anonymous tip were corroborated by the CI: Jennen, along with his girlfriend and their children, was residing where the tip indicated, Jennen had firearms and surveillance cameras, and Jennen had drugs. *See id.*[2]

---

[2]Jennen replies that certain information in the tip—that Jennen and his girlfriend were using drugs in the presence of children and that Jennen was keeping dynamite under his home—had not been corroborated prior to the execution of the warrant. *Morales* does not require that *all* details in an anonymous tip be corroborated, only that future activities be corroborated. 252 F.3d at 1076. The activities that were corroborated here gave the state judicial officer "a substantial basis for finding probable cause." *See Chavez-Miranda*, 306 F.3d at 978.

**[3]** Jennen next contests the reliability of the information obtained through the controlled purchase because the CI had been arrested for crimes of dishonesty and was being compensated by the SPD. We disagree that the information provided by the CI could not be relied on to establish probable cause. In assessing this issue, and considering the evidence provided by the CI, we keep in mind that the superordinate standard controlling the legality of the search is *probable* cause, not certainty of cause. *See Los Angeles County v. Rettele*, 550 U.S. 609, 615 (2007) ("The Fourth Amendment allows warrants to issue on probable cause, a standard well short of absolute certainty."). The mere fact that the CI received compensation and was arrested for crimes of dishonesty is not dispositive given the additional information provided in the affidavit that bolstered the CI's credibility. *See United States v. Meling*, 47 F.3d 1546, 1555 (9th Cir. 1995). The affidavit described how the CI had "assisted . . . in past investigations that resulted in the arrests and convictions of subjects dealing in controlled substances"[3] and that "this CI has been proven reliable." Because the information "provided [by the CI] in the past involved the same type of criminal activity as the current information, the inference of trustworthiness is even stronger." *See United States v. Angulo-Lopez*, 791 F.2d 1394, 1397 (9th Cir. 1986). The CI had a track record of demonstrated reliability in prior drug investigations and therefore the CI could properly be considered more reliable. *See United States v. Rowland*, 464 F.3d 899, 908 (9th Cir. 2006) ("[A]n informant with a proven track record of reliability is considered more reliable than an unproven informant."). The state judicial officer properly issued the warrant because the state judicial officer had "a substantial basis for finding probable cause." *Chavez-Miranda*, 306 F.3d at 978.[4]

---

[3]Jennen notes that the affidavit did not demonstrate that the CI's cooperation, itself, led to convictions. The affidavit did not need to state that convictions were obtained on the basis of the CI's work to establish the CI's reliability.

[4]Jennen argues that the information obtained by the CI through the controlled purchase could not corroborate the anonymous tip because of the

B

**[4]** Jennen next argues that the second, failed controlled purchase undermined probable cause supporting the warrant. Once again we disagree, keeping in mind that it is *probable* cause, not certain cause, that permits the search. *See Rettele*, 550 U.S. at 615. Even in light of the intervening failed controlled purchase, "nothing . . . changed the facts upon which the original affidavit was based and which gave the agents probable cause to believe that articles subject to seizure were in the [residence]." *United States v. Nepstead*, 424 F.2d 269, 271 (9th Cir. 1970). The second controlled purchase, though it did not result in the CI obtaining methamphetamine, showed only that Jennen had no methamphetamine that he was willing to sell at that time once his suspicion was aroused, and did not exculpate Jennen from his apparent involvement in a continuing drug scheme. Given the totality of the circumstances, the second, failed controlled purchase did not undermine probable cause that Jennen had the items sought in the warrant in his residence. *See Gates*, 462 U.S. at 238.

**[5]** Nor, as Jennen contends, was there an "[u]nreasonable delay in the execution of a warrant." *See United States v. Marin-Buitrago*, 734 F.2d 889, 894 (2d Cir. 1984). The warrant was executed six days after it was issued. *See Nepstead*,

---

tipster's anonymity. Doubtless, judicial officers must be cautious about issuing warrants when part of the probable cause determination relies on information provided in an anonymous tip. Here, the CI's reliability and track record, combined with the detailed nature of the information disclosed in the tip, provided "a substantial basis for finding probable cause." *Chavez-Miranda*, 306 F.3d at 978; *see also United States v. Artez*, 389 F.3d 1106, 1114 (10th Cir. 2004) ("[T]he two controlled purchases of methamphetamine from Defendant's residence helped corroborate the confidential informant's tip that the residence was utilized to distribute methamphetamine."); *Rodriques v. Furtado*, 950 F.2d 805, 812 n.9 (1st Cir. 1991) ("The anonymous tip tended to corroborate the CI's report. The CI in turn, had previously provided reliable information.").

424 F.2d at 271 (vacating the district court's suppression order and concluding that the passage of six days since the issuance of the warrant before its execution did not "detract from probable cause"). Because there was no unreasonable delay in executing the warrant and the "facts underlying the magistrate's determination of probable cause" did not "material[ly] change," there was no need, as Jennen argues, for the SPD to confer with a judicial officer to see if "probable cause still exist[ed]." *Marin-Buitrago*, 734 F.2d at 894. The district court did not err in denying Jennen's motion to suppress. Jennen's conviction on his conditional guilty plea stands.

## III

Challenging the sentence he received, Jennen argues that the district court erred in determining that his prior conviction for second degree assault with a deadly weapon constituted a "crime of violence." We hold that Washington's crime of second degree assault with a deadly weapon is categorically a crime of violence.

**[6]** Whether a conviction constitutes a crime of violence under the Guidelines is reviewed de novo. *United States v. Hermoso-Garcia*, 413 F.3d 1085, 1089 (9th Cir. 2005). The Guidelines define crimes of violence to include, among others, "any offense under federal or state law, punishable by imprisonment for a term exceeding one year" that "has as an element the use, attempted use, or threatened use of physical force against the person of another." USSG § 4B1.2(a).

**[7]** Under Washington law, "a person is guilty of assault in the second degree if he or she, under circumstances not amounting to assault in the first degree . . . [a]ssaults another with a deadly weapon." Wash. Rev. Code § 9A.36.021(1). Assault is not statutorily defined but the Supreme Court of Washington has adopted the common-law understanding of assault, which includes three different ways of committing an

assault: (i) "an attempt, with unlawful force, to inflict bodily injury upon another"; (ii) "an unlawful touching with criminal intent"; and (iii) "putting another in apprehension of harm whether or not the actor intends to inflict or is incapable of inflicting that harm." *Clark v. Baines*, 84 P.3d 245, 247 n.3 (Wash. 2004). Second degree assault with a deadly weapon, therefore, is committed by using a deadly weapon while engaging in conduct that fits any of the three definitions above, all three of which, when carried out with a deadly weapon, have as an element the "use, attempted use, or threatened use of physical force against the person of another." *See* USSG § 4B1.2(a)(1).

The first way of committing second degree assault with a deadly weapon requires "an attempt, with unlawful force, to inflict bodily injury upon another," *Clark v. Baines*, 84 P.3d at 247 n.3, and the use of a "deadly weapon," Wash. Rev. Code § 9A.36.021(1)(c). Assault by attempting to inflict bodily injury with a deadly weapon is directly parallel to USSG § 4B1.2(a)(1)'s language of "attempted use . . . of physical force."

**[8]** The second way of committing second degree assault with a deadly weapon requires "an unlawful touching with criminal intent," *Clark v. Baines*, 84 P.3d at 247 n.3, and the use of a "deadly weapon," Wash. Rev. Code § 9A.36.021(1)(c). Jennen argues that *Ortega-Mendez v. Gonzales*, 450 F.3d 1010 (9th Cir. 2006), stands for the proposition that unlawful touching does not require the level of physical force of a crime of violence. *See id.* at 1016. Thus, concludes Jennen, an unlawful touching with a deadly weapon does not require the physical force of a crime of violence. Jennen is mistaken in his conclusion. In *Ortega* we construed the phrase "physical force" in 18 U.S.C. § 16(a)—the sub-section of an immigration statute worded almost identically to USSG § 4B1.2(a)(1)[5]—and reasoned that "the force

---

[5]Section 16(a) and USSG § 4B1.2(a)(1) define "crime of violence" identically except that § 16(a) adds the following underlined language: A

necessary to constitute a crime of violence [under 18 U.S.C. § 16(a)] must actually be violent in nature." *Id.* (alteration in original). We concluded that the "mere offensive touching" that would constitute a simple battery under California law did not rise to that level and therefore such a battery was not categorically a crime of violence within the meaning of § 16(a). *Id.* at 1017-18. Here, we are not faced with the question of whether "mere offensive touching" meets the force requirement of a crime of violence, but rather whether unlawful touching *using a deadly weapon* meets the force requirement of a crime of violence. We conclude that it does.

In *United States v. Heron-Salinas*, 566 F.3d 898 (9th Cir. 2009), we were faced with the question of whether the California crime of assault with a firearm was categorically a crime of violence under 18 U.S.C. § 16. *Id.* at 899. The defendant on appeal argued that assault with a firearm could not categorically be a crime of violence because assault under California law included an unconsented touching, rather than actual force. *Id.* We disagreed and concluded as follows:

> The use of a firearm in the commission of the crime is enough to demonstrate that actual force was attempted or threatened under section 16(a) . . . .
>
> Assault with a firearm naturally falls within the category, crime of violence, under the ordinary meaning of that term. Heron-Salinas was convicted of a crime of violence under 18 U.S.C. § 16.

*Id.* (internal quotation marks and citation omitted). Our conclusion that unconsented touching with a firearm requires "the use, attempted use, or threatened use of physical force" com-

"crime of violence" requires "the use, attempted use, or threatened use of physical force against the person *or property* of another." 18 U.S.C. § 16(a) (emphasis added).

pels the conclusion that unlawful touching using a deadly weapon does too.

The third way of committing second degree assault with a deadly weapon requires "putting another in apprehension of harm whether or not the actor intends to inflict or is incapable of inflicting that harm," *Clark v. Baines*, 84 P.3d at 247 n.3, and the use of a "deadly weapon," Wash. Rev. Code § 9A.36.021(1)(c).

**[9]** Jennen argues that one can put another in apprehension of harm without threatening use of physical force because one can inflict harm without using physical force. But what is required for second degree assault is not merely placing someone in apprehension of harm, but placing them in apprehension of *bodily harm*. *See State v. Byrd*, 887 P.2d 396, 399 (Wash. 1995) ("[S]pecific intent either to create apprehension of bodily harm or to cause bodily harm is an essential element of assault in the second degree."). It follows that placing someone in apprehension of bodily harm with the specific intent of so doing while using a deadly weapon requires a "threatened use of physical force." *See* USSG § 4B1.2(a)(1). Accordingly, the district court correctly concluded that Jennen's conviction for second degree assault with a deadly weapon was categorically a conviction for a crime of violence and did not abuse its discretion in determining Jennen's sentence.[6]

---

[6]Jennen also argues that the sentence imposed was substantively unreasonable. We review the reasonableness of a district court's application of the Guidelines for abuse of discretion. *See United States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008). "A correctly calculated Guidelines sentence will normally not be found unreasonable on appeal." *United States v. Medina-Beltran*, 542 F.3d 729, 732 (9th Cir. 2008) (internal quotation mark omitted). The district court calculated Jennen's sentence correctly and sentenced Jennen to the low end of the range. A low-end Guidelines-range sentence will generally not be considered unreasonable absent unusual circumstances. *See Carty*, 520 F.3d at 996. Jennen points us to no such unusual circumstances here. The district court did not abuse its

## IV

We **AFFIRM** both the district court's denial of Jennen's suppression motion and Jennen's sentence.

---

discretion in sentencing Jennen at the lowest end of the Guidelines range. *See id.* at 993. This sentence is reasonable when all factors relevant under 18 U.S.C. § 3553(a) are considered. Jennen's repeat criminal behavior, drug activity, and his possession of weapons warranted the sentence to protect the public.