**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff - Appellee,<br><br> v.<br><br>CANDELARIO HERNANDEZ<br>JIMENEZ,<br><br>    Defendant - Appellant. | No. 12-30286<br><br>D.C. No. 2:11-cr-02109-FVS-1<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Eastern District of Washington
Fred L. Van Sickle, Senior District Judge, Presiding

Argued and Submitted July 9, 2013
Seattle, Washington

Before: M. SMITH and N.R. SMITH, Circuit Judges, and WALTER, Senior
District Judge.[**]

  Defendant-Appellant Candelario Hernandez Jimenez challenges the denial

of his motion to suppress two firearms that the Yakima Police Department

---

  [*]  This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

  [**]  The Honorable Donald E. Walter, Senior District Judge for the U.S.
District Court for the Western District of Louisiana, sitting by designation.

("YPD") officers found tucked inside the waistband of his pants while conducting a *Terry* frisk. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

**1.** Jimenez argues that YPD officers Saldana and Johnson did not have reasonable suspicion to conduct a *Terry* stop and frisk, based on the information conveyed to them by the 911 dispatcher, because that information was too unreliable. "Reasonable suspicion requires 'specific, articulable facts' which, together with 'objective and reasonable' inferences, form a basis for suspecting that a particular person is engaged in criminal conduct." *United States v. Thomas*, 211 F.3d 1186, 1189 (9th Cir. 2000) (quoting *United States v. Hernandez-Alvarado*, 891 F.2d 1414, 1416 (9th Cir. 1989)). To determine whether the officers had sufficient, reliable information on which to formulate reasonable suspicion, we analyze the totality of the circumstances, including the "quality" and the "quantity" of the information. *See United States v. Rowland*, 464 F.3d 899, 907 (9th Cir. 2006).

Jimenez argues that the information the police officers received was not reliable because it came from an anonymous 911 caller. However, "911 call[s] [are] entitled to greater reliability than a tip concerning general criminality because the police must be able to take seriously, and respond promptly to, emergency 911 calls." *United States v. Terry-Crespo*, 356 F.3d 1170, 1172 (9th Cir. 2004).

-2-

Additionally, the reporting party was not "anonymous" in the sense that it would have been impossible to discover his identity. Rather, he gave the dispatcher both the name and street address of his apartment complex. These facts enhanced the reliability of the information the caller conveyed, because they narrowed the class of potential informants. *See United States v. Fernandez-Castillo*, 324 F.3d 1114, 1117–18 (9th Cir. 2003).

Finally, the reporting party provided detailed and explicit information as events were unfolding. *See Illinois v. Gates*, 462 U.S. 213, 234 (1983); *see also United States v. Morales*, 252 F.3d 1070, 1076 (9th Cir. 2001). When the officers arrived at the apartment complex the caller identified, their observations corroborated many significant pieces of this information, including Jimenez's clothing; the make, model, and color of his vehicle; and his physical location. The officers also called Jimenez by the name that the caller had given them ("Alex"). Although Jimenez failed to comply with the officers' commands, he gave the officers no reason to believe that "Alex" was not his name or that he was not the person for whom they were looking. Under the totality of the circumstances, the officers possessed sufficiently reliable information to form the basis for reasonable suspicion.

**2.** Jimenez further argues that the officers used an unreasonable amount of force to subdue him, which converted the *Terry* stop into an arrest. He argues that the arrest was not supported by probable cause and was therefore unconstitutional, requiring suppression of the firearms discovered following the alleged arrest. "In determining whether the use of intrusive techniques turns a stop into an arrest, we examine the reasonableness of the police conduct in light of a number of factors." *Washington v. Lambert*, 98 F.3d 1181, 1189 (9th Cir. 1996). Here, the officers had information that Jimenez was intoxicated, potentially armed, and had just been involved in a domestic violence incident. *See id.* at 1189 (permitting "intrusive means of effecting a stop . . . where," among other things, "police have information that the suspect is currently armed" and "the stop closely follows a violent crime"). On scene, Jimenez refused to comply with Johnson's and Saldana's repeated orders to put his hands on his car. *Id.* (same where "the suspect is uncooperative"). Finally, after he was on the ground, Jimenez continued to actively resist the officers. Under these circumstances, the officers used a reasonable amount of force to subdue Jimenez, which did not convert the valid *Terry* stop into an arrest.

**AFFIRMED.**